**Milton Lerma MORENO, Appellant,**

v.

**The STATE of Texas, Appellee.**

**Robinson MORENO, Appellant,**

v.

**The STATE of Texas, Appellee.**

**Nos. 10–90–139 CR, 10–90–140 CR.**

Court of Appeals of Texas,
Waco.

Nov. 27, 1991.

Discretionary Review Refused
March 18, 1992.

Gilbert A. Villarreal, Houston, for appellant.

Bill R. Turner, Dist. Atty., Margaret Lalk, Asst. Dist. Atty., Bryan, for appellee.

Before THOMAS, C.J., and CUMMINGS and VANCE, JJ.

## OPINION

THOMAS, Chief Justice.

On February 15, 1990, Robinson Moreno was driving down Interstate 6 when Officer Coy, who was in an unmarked vehicle, spotted and recognized him. Coy, however, did not recognize the passenger in the car, Milton Moreno. Believing that Robinson would be transporting drugs, Coy followed the vehicle and radioed for assistance from the Department of Public Safety in Bryan. Coy followed the vehicle continuously until, approximately thirty minutes later, Officer Fonseca stopped the vehicle. Coy also stopped his car to assist Fonseca. Fonseca claimed he stopped the car for two reasons: (1) neither Robinson nor Milton was wearing a seat belt; and (2) Coy, a superior officer, had requested the stop. Fonseca then apparently obtained Robinson's consent to search the vehicle. Under the hood of the car officers found a brown paper bag weighing approximately 745 grams. It contained 31 plastic bags of cocaine. Officers subsequently discovered a small, useable amount of cocaine rolled in some currency in Milton's wallet.

Robinson and Milton were tried together and each convicted of possession of over 400 grams of cocaine. Milton was also convicted of possessing less than 28 grams of cocaine. Points on appeal relate to the denial of a Batson [1] motion, the legality of the search and seizure, the sufficiency of the evidence, chain of custody, allegedly extraneous offenses, the prosecutor's final argument, and the charge. We will affirm

---

1. See Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

the judgment convicting Robinson, affirm the judgment convicting Milton of possession of less than 28 grams of cocaine, reverse the judgment convicting Milton of possession of over 400 grams of cocaine, and order an acquittal on that charge.

## THE *BATSON* HEARING

■ In points eight through eleven, Milton argues that the court erred when it denied his *Batson* motion. A court's ruling on a *Batson* motion will not be disturbed unless it was clearly erroneous. *Whitsey v. State,* 796 S.W.2d 707, 726 (Tex.Crim. App.1990) (on rehearing).

■ Initially, a defendant must produce *evidence* sufficient to demonstrate that the state engaged in purposeful racial discrimination through the use of its peremptory challenges. *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 1723, 90 L.Ed.2d 69 (1986). Once the defendant establishes a prima facie case, the burden shifts to the state to offer a neutral explanation for each of its strikes against a potential juror of a cognizable racial group. *Id.;* TEX. CODE CRIM.PROC.ANN. art. 35.261(a) (Vernon 1989).

■ Unsworn statements by counsel of what occurred during voir dire and of jurors' personal characteristics are not evidence. *Shields v. State,* 820 S.W.2d 831, 833 (Tex.App.—Waco 1991, no pet.); *Prosper v. State,* 788 S.W.2d 625, 626–27 n. 1 (Tex.App.—Houston [14th Dist.] 1990, pet. ref'd). Furthermore, documents such as the list of prospective jurors, their personal profile cards, and the parties' strike lists are not part of the transcript, but may become part of the record if they are introduced into evidence at the *Batson* hearing. *Shields,* 820 S.W.2d at 833.

The statement of facts does not contain the list of prospective jurors, their profile cards, or the parties' strike lists. The only indication of any disparate treatment is contained in unsworn statements from defense counsel. As already noted, these unsworn statements were not *evidence. See id.* at 833. Therefore, considering the totality of the circumstances in the light most favorable to the court's ruling, the ruling

was not clearly erroneous because Milton failed to offer any *evidence* to sustain his burden. His eighth through eleventh points are overruled.

## THE SEARCH AND SEIZURE

Milton, the passenger in the car, complains in points one through seven that the court should have suppressed as evidence the cocaine found under the car's hood and in his wallet. Robinson argues in points ten through twelve that the court erred when it denied his motion to suppress the warrantless seizure of the cocaine because (1) he was illegally detained and (2) the search was unreasonable under the circumstances.

■ The Fourth Amendment guarantees people the right to be "secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. Thus, warrantless searches are generally per se unreasonable. *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967). The burden is on the government to show that a warrantless search and seizure fall within one of the narrow exceptions to the warrant requirement and that the exigency of the circumstances made the seizure without a warrant imperative. *McDonald v. United States,* 335 U.S. 451, 69 S.Ct. 191, 193, 93 L.Ed. 153 (1948).

■ Evidence obtained in violation of the constitution must be suppressed, and the court has no discretion in the matter. *Polk v. State,* 738 S.W.2d 274, 276 (Tex. Crim.App.1987); TEX.CODE CRIM.PROC.ANN. art. 38.23(a) (Vernon Supp.1991). The court's ruling on a motion to suppress must be upheld, however, unless it was clearly erroneous. *United States v. Cortez,* 449 U.S. 411, 101 S.Ct. 690, 694, 66 L.Ed.2d 621 (1981).

■ An officer may stop and detain a person for investigative purposes, without probable cause, if the officer has a reasonable suspicion, which he can support with articulable facts, that the person is involved in criminal activity. *Terry v. Ohio,*

392 U.S. 1, 88 S.Ct. 1868, 1884–85, 20 L.Ed.2d 889 (1968). However, there must be "some minimum level of objective justification" for the stop. *INS v. Delgado,* 466 U.S. 210, 104 S.Ct. 1758, 1763, 80 L.Ed.2d 247 (1984). When evaluating the validity of a *Terry* stop, we must consider the totality of the circumstances: "The process does not deal with hard certainties, but with probabilities. Long before the law of probabilities was articulated as such, practical people formulated certain common sense conclusions about human behavior; jurors as factfinders are permitted to do the same—and so are law enforcement officers." *See Cortez,* 101 S.Ct. at 695. Thus, "when used by trained law enforcement officers, objective facts, meaningless to the untrained, can be combined with permissible deductions from such facts to form a legitimate basis for suspicion of a particular person and for action on that suspicion." *Id.* at 695–96.

■ Officer Coy, a narcotics investigator stationed in Central Texas, testified at the hearing on the motion to suppress. He claimed that since November 1988 much of his caseload had been focused on drug cartels involving Colombian nationals who were transporting drugs from Houston to Waco. During these investigations, he had become familiar with Robinson, whom he knew to be related to other members involved in a "family organization" distributing drugs.

On several occasions, Coy had observed Robinson in a "high area of [drug] trafficking." Officers had conducted visual and video surveillance which revealed Robinson "meeting with other individuals who were known cocaine traffickers and it appeared that they were conducting transactions." Furthermore, Coy said that informants who had provided reliable information in the past told him that Robinson was involved in transporting cocaine from Houston to Waco.

Coy admitted that when he ordered Appellants stopped he had no specific information that they would be transporting drugs that day. Although Coy would not have suspected criminal activity if he had seen them driving on another highway, seeing Robinson driving on Highway 6 toward Waco, along with the information that Robinson was connected with the transportation of drugs from Houston to Waco, caused him to order the stop.

Based on the record as a whole, Coy's specific, articulable facts gave rise to a reasonable suspicion that justified Appellants' detention and further investigation. *See id.* Accordingly, we hold that the search and seizure of the drugs from the automobile and from Milton's wallet were neither the result of an illegal detention nor unreasonable under the circumstances. Milton's first through seventh points and Robinson's tenth through twelfth points are overruled.

■ Robinson's thirteenth through seventeenth points are that the State failed to establish an exception to the warrant requirement. An exception to both the warrant and probable-cause requirements is a search conducted by consent. *Meeks v. State,* 692 S.W.2d 504, 509 (Tex.Crim.App. 1985). The state must prove by clear and convincing evidence, based on the totality of the circumstances, that the consent was freely and voluntarily given. *Id.* at 510. Furthermore, a search is valid if, in light of all the circumstances, the officers' belief that they had consent to search was objectively reasonable. *Illinois v. Rodriguez,* — U.S. —, 110 S.Ct. 2793, 2801, 111 L.Ed.2d 148 (1990).

■ Voluntary consent to search is valid whether oral or written. *See Sallings v. State,* 789 S.W.2d 408, 417 (Tex. App.—Dallas 1990, pet. ref'd). Officers need not inform an individual that he has the right to refuse to allow the search. *Meeks,* 692 S.W.2d at 510.

■ Officer Fonseca, who stopped Robinson's car, testified that he approached the vehicle with his hand on his gun and asked Robinson, in English, for some identification. Robinson apparently understood because he handed Fonseca a driver's license. Fonseca then asked for some identification from the passenger. Robinson translated Fonseca's request in Spanish, and Milton

replied that he did not have any identification. Speaking in Spanish, Fonseca requested permission to search the car as follows: "Los da permiso de *esculcar* su automobile." (Emphasis added). Robinson responded, "Si," i.e., yes. The record reveals that *esculcar* is not a Spanish word; however, *escular* is a Spanish word meaning to search or look for. Fonseca, however, testified that although he used the word *esculcar*, he has "no doubt . . . that [Robinson and Milton] understood what [he] said."

Fonseca asked Robinson and Milton to get out of the automobile, which they did, and the car was searched. As a result of the search, officers found 745 grams of cocaine in a paper sack in the engine compartment.

Based on the totality of the circumstances, we find that Robinson freely and voluntarily consented to the search of the vehicle and that Fonseca's belief that he had permission to search the car was objectively reasonable. Robinson's thirteenth through seventeenth points are overruled.

SUFFICIENCY OF THE EVIDENCE

■ When considering a complaint that the evidence is insufficient, we must determine whether, viewing the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Butler v. State,* 769 S.W.2d 234, 239 (Tex.Crim.App.1989). A defendant must exercise care, custody, control, and management over illicit drugs, knowing them to be drugs, before he is guilty of their possession. *Dickey v. State,* 693 S.W.2d 386, 389 (Tex.Crim.App.1984).

■ If the defendant is not in sole possession of the premises where drugs are found, the state must prove an affirmative link between the contraband and the defendant to establish his possession. *Deshong v. State,* 625 S.W.2d 327, 329 (Tex.Crim. App. [Panel Op.] 1981). An affirmative link is established by facts and circumstances from which one may reasonably infer that the defendant knew the contraband existed and that he exercised care,

custody, control, and management over it. *Dickey,* 693 S.W.2d at 389. However, mere presence alone is insufficient to affirmatively link a defendant to narcotics. *Meeks,* 692 S.W.2d at 511.

■ Robinson's first through fifth points are that the evidence was insufficient to prove that he possessed over 400 grams of cocaine. The cocaine was found in the engine compartment of a car which Robinson was driving, maintained insurance on, and had made several payments on. *See Villarreal v. State,* 703 S.W.2d 301, 305 (Tex.App.—Corpus Christi 1985, no pet.). From this evidence the jury could have reasonably concluded that Robinson had control over the vehicle. The drugs, although hidden under the car's hood, were in an enclosed place that was readily accessible to him. *See Albert v. State,* 659 S.W.2d 41, 44–45 (Tex.App.—Houston [14th Dist.] 1983, pet. ref'd). Furthermore, Officer Coy, based on his investigation of drug cartels transporting cocaine from Houston to Waco, recognized Robinson traveling north on Highway 6—heading from Houston toward Waco—and followed him for approximately forty miles. Based on these affirmative links and the considerable amount of cocaine found, a jury could reasonably infer that Robinson knowingly possessed it.

■ Robinson also complains that the evidence is insufficient to support his conviction because (1) there was no testimony about dilutants or adulterants and (2) the chemist, who only weighed and tested 16 of the 31 bags, found 405 grams of 70% pure cocaine. The chemist did, however, visually examine, feel, and smell the remaining 15 bags and testified that they appeared to be identical to the 16 bags he tested. By multiplying 70% (the cocaine's purity) by 405 grams (the weight of the cocaine tested), Robinson argues that he only possessed 283.5 grams of cocaine.

A person is guilty of aggravated possession of a controlled substance "if the amount of the controlled substance possessed is, by aggregate weight, including adulterants or dilutants, 400 grams or

more." TEX.HEALTH & SAFETY CODE ANN. § 481.115(d)(2) (Vernon 1991). Logically, a substance which contains 70% cocaine also contains 30% of an adulterant or dilutant. Based on the record as a whole, any rational trier of fact could have found that Robinson knowingly possessed over 400 grams of cocaine, including adulterants and dilutants. Robinson's first five points are overruled.

Milton's sixteenth point is that the evidence was insufficient to sustain his conviction of possessing less than 28 grams of cocaine. Officer Field testified that he took custody of Appellants at the Department of Public Safety office and transported them to the county jail. They were taken before a magistrate and then to the "booking desk in the jail," where they were told to empty their pockets. *See Rogers v. State,* 774 S.W.2d 247, 264 (Tex.Crim.App. 1989), *cert. denied,* 493 U.S. 984, 110 S.Ct. 519, 107 L.Ed.2d 520 (1989) (holding that a defendant's personal items can be inventoried when he is booked into a detention facility). Field, who "picked up the wallet that [Milton] had taken out of his pocket and ... began looking through it for inventory purposes, ... found a couple of pieces of U.S. currency that were half folded and half wadded up and stuck in one of the compartments." As he unfolded the bills, a "white powdery substance started falling on the counter." Field then placed the currency and white substance in a plastic bag and heat-sealed it.

Field took the evidence to Lieutenant Stewart, who placed it in the evidence locker. Stewart personally submitted the evidence to the laboratory in Austin for testing. Dennis Ramsey, a chemist, tested the substance and determined that it was cocaine weighing .11 grams. He did not, however, test the purity of the cocaine.

Based on the record as a whole, any rational trier of fact could have found beyond a reasonable doubt that Milton possessed the cocaine found in his wallet. *See*

*Butler,* 769 S.W.2d at 239. We overrule Milton's point sixteen.

Milton complains in points twelve through fifteen that the evidence was insufficient to affirmatively link him to the 745 grams of cocaine found under the hood of the vehicle. The only affirmative link between Milton and the cocaine under the hood was the cocaine found in his wallet. *See Daniels v. State,* 574 S.W.2d 127, 128–29 (Tex.Crim.App. [Panel Op.] 1978). He was not connected with the ownership or control of the car; whatever relationship he had with Robinson was not explored;[2] he made no furtive gestures; he did not attempt to escape; he made no incriminating statements; he was not under the influence of an illegal drug; and the odor of an illegal drug was not present in or around the vehicle. *See Meeks,* 692 S.W.2d at 512. Merely possessing .11 grams of cocaine, which was not tested for its purity and thus could not be connected with the larger amount of cocaine, was not sufficient to affirmatively link Milton to the cocaine found under the hood of the vehicle in which he was a passenger. Accordingly, the evidence was insufficient for the jury to find beyond a reasonable doubt that Milton possessed over 400 grams of cocaine. We sustain Milton's points twelve through fifteen, reverse the judgment in cause number 10–90–139–CR pertaining to his possession of over 400 grams of cocaine, and order an acquittal on that charge.

## CHAIN OF CUSTODY

Milton argues in point seventeen that the State failed to establish a completed chain of custody of the drugs in his wallet because Officer Dawson, the arresting officer, did not testify. At the suppression hearing, Officer Coy testified that he "believed" Dawson looked through Milton's wallet at the time of his arrest, but that evidence was never offered at trial. The record at trial does not contain any evi-

---

**2.** Although the record reveals that both Appellants have the same "last name," it also contains testimony that in Hispanic cultures the surname does not necessarily come last, i.e., Milton Lerma Moreno's surname is Lerma, and, therefore, he is not necessarily related to Robinson Zamora Moreno.

dence that Officer Field was not the first to discover the cocaine in Milton's wallet. The State adequately traced the chain of custody from the time Field first found the cocaine in Milton's wallet to its introduction into evidence. Furthermore, there was no evidence of tampering. In the absence of such evidence, an objection based on the chain of custody went to the exhibit's weight and not its admissibility. *See Bird v. State,* 692 S.W.2d 65, 70 (Tex.Crim.App. 1985), *cert. denied,* 475 U.S. 1031, 106 S.Ct. 1238, 89 L.Ed.2d 346 (1986). Accordingly, the court did not abuse its discretion when it admitted the cocaine taken from his wallet into evidence. *See Crank v. State,* 761 S.W.2d 328, 342 (Tex.Crim.App.1988). Milton's seventeenth point is overruled.

## EXTRANEOUS OFFENSES

Robinson's eighth and ninth points and Milton's twenty-first through twenty-third points are that the court erred when it admitted evidence of extraneous offenses. They particularly complain that the prosecutor was permitted throughout the trial to introduce evidence regarding drug cartels, international importation of drugs, and "money laundering." Whether to admit evidence is a question for the trial judge, and his decision will not be disturbed on appeal absent an abuse of discretion. *Id.*

First, Appellants waived any complaint because on several occasions they failed to object as soon as grounds for the objection became apparent. *See Thompson v. State,* 691 S.W.2d 627, 635 (Tex.Crim.App.1984). Second, events do not occur in a vacuum and, even though prejudicial, evidence explaining the context of an offense is usually admissible. *Mann v. State,* 718 S.W.2d 741, 744 (Tex.Crim. App.1986). Here, the alleged extraneous-offense evidence explained Officer Coy's reason for stopping and detaining Appellants. Accordingly, we hold that the court did not abuse its discretion when it admitted the evidence. *See* TEX.R.CRIM.EVID. 401. However, assuming that the evidence was erroneously admitted, based on the record as a whole and the amount of cocaine involved, we hold that it did not con-

tribute to Robinson's conviction for possession of over 400 grams of cocaine, Milton's conviction for possession of less than 28 grams of cocaine, or their punishments. *See Harris v. State,* 790 S.W.2d 568, 587 (Tex.Crim.App.1989); TEX.R.APP.P. 81(b)(2). These points are overruled.

## THE PROSECUTOR'S FINAL ARGUMENT

Robinson's points twenty and twenty-one and Milton's points twenty-four and twenty-five are that certain comments by the prosecutor during final argument were highly inflammatory and prejudicial. The Court of Criminal Appeals has recently decided that the harm analysis in Rule 81(b)(2)—i.e., whether an error made no contribution to the conviction or punishment beyond a reasonable doubt—applies to jury-argument error. *Orona v. State,* 791 S.W.2d 125, 129–30 (Tex.Crim.App. 1990). Proper jury argument falls within one of the following categories: (1) a summary of the evidence; (2) a reasonable deduction from the evidence; (3) an answer to the opponent's argument; or (4) a plea for law enforcement. *Alejandro v. State,* 493 S.W.2d 230, 231 (Tex.Crim.App.1973). All other arguments are improper. Courts often mistakenly refer to improper argument as "error." *See, e.g., Whiting v. State,* 797 S.W.2d 45, 48 (Tex.Crim.App.1990) (stating that "error [was] committed by the State's" actions). However, error—unless fundamental—can only occur when the court acts or fails to act. *Washington v. State,* 822 S.W.2d 110 (Tex.App.—Waco 1991, no pet.); *see* Paper by Thomas H. Crofts, Jr., *Harmless Error in Civil Cases,* Judicial Section Annual Conference (September 1990).

Thus, when reviewing a complaint about jury argument, we must first determine whether the argument was improper. If improper, we must then decide whether the court's reaction to the improper argument was erroneous. Of course, unless the error is fundamental, a party must secure an adverse ruling to complain on appeal. The proper method of pursuing

an objection to an adverse ruling is to (1) object, (2) request an instruction to disregard, and (3) move for a mistrial. *Koller v. State*, 518 S.W.2d 373, 375 n. 2 (Tex. Crim.App.1975). If we hold that the court erred, we must then apply the Rule 81(b)(2) harm analysis to ascertain whether the error constitutes reversible error. *See Orona*, 791 S.W.2d at 129–30. A harmless-error analysis is not necessary if there was no error or if the error was fundamental. *See, e.g., Bird v. State*, 527 S.W.2d 891, 894 (Tex.Crim.App.1975) (explaining that a direct comment on the defendant's failure to testify during argument is so improper that an instruction cannot be curative and a harmless error analysis is unnecessary).

When a court overrules an objection to improper jury argument, error results and a harm analysis under 81(b)(2) is required. *Orona*, 791 S.W.2d at 129–30. Likewise, when a court sustains an objection to improper argument but fails to give a requested instruction to disregard, error occurs and its effect must be analyzed under Rule 81(b)(2). *Washington*, at 118.

A different step is required, however, when an objection is sustained, an instruction to disregard is given, and a motion for a mistrial is denied. Because a harm analysis under Rule 81(b)(2) presupposes that the court has erred, the pivotal question is how does one determine whether the denial of a motion for a mistrial was error? This necessarily turns upon whether the instruction to disregard was curative. In assessing the curative effect of the instruction, the correct inquiry is whether the argument was "extreme, manifestly improper, inject[ed] new and harmful facts into [the] case or violate[d] a mandatory statutory provision and [was] thus so inflammatory that its prejudicial effect cannot reasonably be cured by [a] judicial instruction to disregard [the] argument."

*See Hernandez v. State*, 819 S.W.2d 806, 820 (Tex.Crim.App.1991).[3]

If the answer to the inquiry is "no" because the instruction cured any harm caused by the improper argument, then no error occurred and the analysis ends. If, however, the answer to the inquiry is "yes," a harm analysis under Rule 81(b)(2) is required. *See Orona*, 791 S.W.2d at 129–30; *Washington*, at 118. Such an analysis might seem redundant because an erroneous denial of a mistrial following improper jury argument likely would contribute to the conviction or punishment beyond a reasonable doubt. Nevertheless, an event occurring after the denial of the motion could conceivably dissipate the error's effect on the jury so that it did not contribute to the conviction or punishment beyond a reasonable doubt. *See Harris*, 790 S.W.2d at 587–88. This is because the decision whether to grant or deny a mistrial must be judged at the moment the court acted. However, the entire record must be considered when applying a harm analysis. *Id.* at 586.

At trial the prosecutor made the following argument:

Were the officers acting properly when they searched the car is not an issue that goes to guilt or innocence, but Defense Counsel would like you to be so outraged by the bad behavior of our officers that *you decide to throw out the evidence and the facts in this case because you feel the cops shouldn't have stopped that car.*

*Well, that's not one of your options. Those questions of law have been ruled upon, and those questions of law—*

(Emphasis added). Appellants' objection to the argument was overruled.

**3.** In *Hernandez,* the Court of Criminal Appeals never discussed the applicability of Rule 81(b)(2). Instead, it held that "reversible *error* results from improper prosecutorial argument only where argument is extreme, manifestly improper, injects new and harmful facts into [the] case or violates a mandatory statutory provision and is thus so inflammatory that its prejudicial effect cannot reasonably be cured by [a] judicial instruction to disregard [the] argument." *Hernandez v. State,* 819 S.W.2d 806, 820 (Tex.Crim. App.1991) (emphasis added). Although the court reached the correct result because it found that the instruction was curative—i.e., no error occurred and, thus, no harm analysis was required—it utilized the wrong analysis. *Washington v. State,* at 118–19 (Tex.App.—Waco 1991, no pet.).

The argument was not a summation of the evidence, a deduction from the evidence, an answer to an opposing argument or a plea for law enforcement. It was, therefore, improper and the court erred when it overruled Appellants' objection. Accordingly, we must ascertain whether the error was harmless. *See Orona*, 791 S.W.2d at 129–30.

■■■ The record reveals that in making this argument the State was not attempting to taint the trial process. *See Harris*, 790 S.W.2d at 588. The prosecutor made a passing reference to a question of law decided out of the presence of the jury. *See id.* Furthermore, once the objection was made, the prosecutor completely abandoned the argument. *See Orona*, 791 S.W.2d at 130. Based on the record as a whole, any probable impact of the error on the jury was slight. *See id.* We, therefore, find that the error was harmless. *See* TEX. R.APP.P. 81(b)(2).

■■■ The prosecutor also argued:

It absolutely boggles the mind. It boggles the mind that this quantity of powder and this kind of money that it represents could be floating around the State of Texas, specifically on the road from Houston to Waco, totally unbeknownst to the driver of the car, the driver who already has established links with the people who are smuggling that stuff.

The prosecutor has wide latitude during argument. *Denison v. State*, 651 S.W.2d 754, 761–62 (Tex.Crim.App.1983). Although Appellant's objection was overruled, no error occurred because this argument was proper both as a summary of the evidence and a reasonable deduction from the evidence. *See Alejandro*, 493 S.W.2d at 231.

■■■ Appellants' final complaint under these points is based on the following:

[PROSECUTOR]: ... These are not the major players in this trade, ladies and gentlemen, but they're a piece of it. They're a piece of the kind of misery and death that the—

[APPELLANTS' ATTORNEY]: I'm going to object to that, Your Honor. That is an inflammatory, improper argument on this case. It is completely outside the record. There's no reasonable inference to be determined from that— from the evidence presented, and that's not proper response to defense argument. It is also not a proper plea for law enforcement.

THE COURT: I'll sustain.

[PROSECUTOR]: The evidence that you have—

[APPELLANTS' ATTORNEY]: I'll ask that the jury be instructed to disregard that last comment that the prosecutor made.

THE COURT: Members of the jury, you are instructed to please disregard the last comment from the prosecution.

[APPELLANTS' ATTORNEY]: And I would also move for a mistrial.

THE COURT: Overruled.

Because the court sustained Appellants' objection, instructed the jury to disregard the argument, and denied the motion for a mistrial, we must determine whether the instruction was curative. In light of the entire record and the court's prompt instruction to disregard, the argument was not extreme or manifestly improper, did not inject new and harmful facts into the case, violate a mandatory statutory provision and, thus, was not so inflammatory that its prejudicial effect could not be cured by the instruction. Finding that no error occurred, we need not apply a harm analysis under Rule 81(b)(2). *See Washington*, at 118; TEX.R.APP.P. 81(b)(2).

Robinson's twentieth and twenty-first points and Milton's twenty-fourth and twenty-fifth points are overruled.

## THE CHARGE

Robinson's sixth and seventh points and Milton's eighteenth and nineteenth points relate to alleged errors in the charge on guilt-innocence. Specifically, they assert that the court erred when it failed to define "possession" as a voluntary act and to apply the law of voluntary possession to the facts.

■ The court defined "possession" as "actual care, custody, control or management of the controlled substance." This is the precise definition contained in the Health and Safety Code. *See* TEX.HEALTH & SAFETY CODE ANN. § 481.002(38) (Vernon 1991). Because there was no evidence that Appellants' possession was involuntary, the court did not err when it refused to submit the proposed definition of voluntary possession. *See Jones v. State*, 632 S.W.2d 646, 648 (Tex.App.—El Paso 1982, pet. ref'd). Likewise, the court could not have erred when it refused to apply that definition to the facts. Robinson's sixth and seventh points and Milton's eighteenth and nineteenth points are overruled.

Article 38.23 of the Code of Criminal Procedure provides:

(a) No evidence obtained ... in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.

In any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained.

TEX.CODE CRIM.PROC.ANN. art. 38.23(a) (Vernon Supp.1991). Robinson and Milton argue in points eighteen and twenty, respectively, that cross-examination of the officers raised a fact issue about whether the cocaine was obtained in violation of their constitutional rights.

At trial, Appellants' attorney specifically argued to the court that the following raised an issue of fact:

From the questions that the jury has even been asking that have not been—some of them which have not been allowed. The issue of the consent is over—the officer admitted on the record about esculcar, which is the big word, and the fact that he had a form that was there—I'm sorry—that he did not use,

that there is a difference between the language that is in the form that means to search and the word that he used, and it—I think that the charge would have to also include, in addition to the consent, the legality of the stop.

If they determined that the officer did not, in fact, for example, see a traffic infraction that was committed in his presence, then they are to not use that evidence and disregard that evidence for any purpose, whatsoever. And that issue goes also down to the guts of this case, all of them being material issues.

Thus, Appellants contend that the jury should have been instructed to disregard the evidence if it believed or had a reasonable doubt that the cocaine was seized in violation of their constitutional rights.

■ The questions that the jury was submitting to the court were not evidence. The testimony about "escular" and "esculcar" occurred during a voir dire examination of the witness and was, therefore, not before the jury. Furthermore, officers are not required to observe a traffic infraction before they detain a vehicle but, rather, must only have a reasonable suspicion, supported by articulable facts, that the occupant is involved in criminal activity. *See Terry*, 88 S.Ct. at 1884–85. As already decided, the *Terry* stop in this case was proper.

■ Considering the record as a whole and, particularly, Appellants' failure to call any defense witnesses to controvert the officers' testimony, the evidence did not raise a fact issue on the legality of the stop. *See Burgett v. State*, 646 S.W.2d 615, 619 (Tex.App.—Fort Worth 1983, pet. ref'd). Thus, the court did not err when it refused to instruct the jury that it should not consider the cocaine if it believed or had a reasonable doubt that the cocaine was obtained in violation of Appellants' constitutional rights. *See* TEX.CODE CRIM. PROC.ANN. art. 38.23(a) (Vernon Supp.1991). These points are overruled.

■ Finally, Robinson's nineteenth point is that the court erred when it denied his requested instruction on voluntary con-

sent. The testimony concerning the voluntariness of the consent was elicited outside the presence of the jury. Furthermore, Officer Fonseca stated that he had no doubt that Appellants understood his request for consent to search the vehicle. The State met its burden of proving by clear and convincing evidence that Robinson's consent to search the car was freely and voluntarily given. *See Meeks*, 692 S.W.2d at 510. Based on the record as a whole, the court did not err when it refused to submit the requested instruction because no fact issue was raised by the evidence on the voluntariness of the consent. *See* TEX. CODE CRIM.PROC.ANN. art. 38.23(a) (Vernon Supp.1991). We overrule Robinson's nineteenth point.

The judgment in cause number 10–90–140–CR convicting Robinson of possession of over 400 grams of cocaine is affirmed. In cause number 10–90–139–CR, we affirm the portion of the judgment convicting Milton of possession of less than 28 grams of cocaine but reverse the portion of the judgment convicting him of possession of over 400 grams of cocaine and order an acquittal on that charge.