# NO. 12-15-00073-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *YAGO SANTAIN FOUNTAIN,* *APPELLANT* | § | *APPEAL FROM THE 114TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,* *APPELLEE* | § | *SMITH COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Yago Santain Fountain appeals his conviction for possession of marijuana. He raises one issue relating to the sufficiency of the evidence. We reverse and render.

### BACKGROUND

A Smith County grand jury indicted Appellant for possessing marijuana in an amount of fifty pounds or less but more than five pounds. Appellant pleaded "not guilty" to the indictment, and a jury trial was held. Ultimately, the jury found Appellant "guilty," and assessed his punishment at ten years of imprisonment with a $10,000.00 fine. This appeal followed.

### SUFFICIENCY OF THE EVIDENCE

In his sole issue, Appellant contends the evidence is legally insufficient to prove that he possessed marijuana. The State contends that the combined circumstantial evidence, coupled with reasonable inferences therefrom, established that Appellant knowingly possessed marijuana.

**Standard of Review**

When sufficiency of the evidence is challenged on appeal, we view all of the evidence in the light most favorable to the verdict to decide whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See **Jackson v. Virginia**,*

443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979); ***Brooks v. State***, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). Under this standard, the jury is the sole judge of the witnesses' credibility and the weight of their testimony. ***Jackson***, 443 U.S. at 319, 99 S. Ct. at 2789; ***Brooks***, 323 S.W.3d at 899. A jury is permitted to draw multiple reasonable inferences, but it is not permitted to come to conclusions based on mere speculation or factually unsupported inferences or presumptions. ***Hooper v. State***, 214 S.W.3d 9, 15 (Tex. Crim. App. 2007).

A "presumption" is a legal inference that a fact exists if the facts giving rise to the presumption are proven beyond a reasonable doubt. ***Id.*** at 16. An "inference" is a conclusion reached by considering other facts and deducing a logical consequence from them. ***Id.*** "Speculation" is mere theorizing or guessing about the possible meaning of facts and evidence presented. ***Id.*** A conclusion reached by speculation may not be completely unreasonable, but it is not sufficiently based on facts or evidence to support a finding beyond a reasonable doubt. ***Id.***

When we apply the ***Jackson v. Virginia*** standard of review, we determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict. ***Garcia v. State***, 367 S.W.3d 683, 687 (Tex. Crim. App. 2012). When the record supports conflicting inferences, we must presume that the fact finder resolved the conflicts in favor of the prosecution and defer to that determination. ***Id.***

In determining whether the state has met its burden of proving the defendant guilty beyond a reasonable doubt, we compare the elements of the crime as defined by a hypothetically correct jury charge to the evidence adduced at trial. ***Thomas v. State***, 444 S.W.3d 4, 8 (Tex. Crim. App. 2014). A hypothetically correct jury charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the state's burden or restrict its theories of liability, and adequately describes the particular offense for which the defendant was tried. ***Malik v. State***, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).

As charged in the indictment, the State was required to show that Appellant intentionally or knowingly possessed a usable quantity of marijuana in an amount of fifty pounds or less but more than five pounds. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.121(a), (b)(4) (West 2010). Here, Appellant contests only the element of possession. We limit our analysis accordingly. *See* TEX. R. APP. P. 47.1.

**Applicable Law**

To prove unlawful possession, the state must prove that (1) the defendant exercised control, management, or care over the substance, and (2) the accused knew the matter possessed was contraband. *Poindexter v. State*, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005); *see also* TEX. HEALTH & SAFETY CODE ANN. § 481.002(38) (West Supp. 2014) (defining possession as "actual care, custody, control, or management"). Whether direct or circumstantial, the evidence "must establish, to the requisite level of confidence, that the accused's connection with the drug was more than just fortuitous." *Poindexter*, 153 S.W.3d at 405. This is known as the "affirmative links" rule, which protects the innocent bystander from conviction "merely because of his fortuitous proximity to someone else's drugs." *Evans v. State*, 202 S.W.3d 158, 161–62 (Tex. Crim. App. 2006).[1] Thus, when the accused is not in exclusive possession of the place where the substance is found, it cannot be concluded that he had knowledge of and control over the contraband "unless there are additional independent facts and circumstances which affirmatively link the accused to the contraband." *Poindexter*, 153 S.W.3d at 406.

The Texas Court of Criminal Appeals has recognized that some factors which "may circumstantially establish the legal sufficiency of the evidence to prove a knowing 'possession'" include the following: (1) the defendant's presence when a search is conducted, (2) whether the contraband was in plain view, (3) the defendant's proximity to and the accessibility of the narcotics, (4) whether the defendant was under the influence of narcotics, (5) whether the defendant possessed other contraband or narcotics when arrested, (6) whether the defendant made incriminating statements when arrested, (7) whether the defendant attempted to flee, (8) whether the defendant made furtive gestures, (9) whether there was an odor of contraband, (10) whether other contraband or drug paraphernalia were present, (11) whether the defendant owned or had the right to possess the place where the drugs were found, (12) whether the place where the drugs were found was enclosed, (13) whether the defendant was found with a large amount of cash, and (14) whether the conduct of the defendant indicated a consciousness of guilt. *See Evans* at 162 n.12.

The number of factors is not as important as the logical force the factors have in establishing the elements of the offense. *Hargrove v. State*, 211 S.W.3d 379, 386 (Tex. App.—

---

[1] In *Evans v. State*, the court of criminal appeals recognized that the word "affirmative" adds nothing to the plain meaning of "link," and states that evidence of drug possession is judged by the same standard as all other evidence. *See Evans v. State*, 202 S.W.3d 158, 161 n.9 (Tex. Crim. App. 2006).

San Antonio 2006, pet. ref'd).  Therefore, each case must be examined according to its own facts on a case by case basis.  ***Burrell v. State***, 445 S.W.3d 761, 765 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd) (noting that a factor that contributes to sufficiency in one situation may be of little value in another situation).

**The Evidence**

On the night of September 13, 2013, Trooper Chad Martin conducted a traffic stop on a 2005 Chevrolet Suburban for a defective license plate lamp.  Lapatrick Mitchell was the driver, and Appellant was the passenger.

Mitchell had a Louisiana driver's license and Appellant had no identification.  Mitchell told Trooper Martin that he and Appellant went to Dallas from Louisiana and were on their way home.  Mitchell first said that they went to get a tire fixed.  Trooper Martin testified that he thought it was "odd" to drive from Louisiana to Dallas to fix a tire because the drive takes approximately three hours.  But Mitchell also told Trooper Martin that they took Appellant's aunt to Dallas, and ate at two restaurants.  Mitchell did not describe any other activities that they engaged in, but the record reflects that Mitchell and Appellant were together the entire time.

Trooper Martin's conversation with Mitchell began inside the Suburban, but ultimately moved outside.  Appellant remained inside the vehicle while Trooper Martin spoke to Mitchell.  But prior to Mitchell's exiting the vehicle, Appellant's demeanor was, according to the trooper, "very odd" for a passenger.

Trooper Martin testified that when he first approached the driver's side of the vehicle, Appellant had unbuckled his seat belt and was looking at him like a "deer in the headlight[s]."  Appellant's demeanor was so uncommon that one of Trooper Martin's first questions to Appellant was whether he "plan[ned] on running."  Trooper Martin had more extensive contact with Appellant after Mitchell exited the vehicle.  The trooper testified that during their second contact, Appellant was breathing rapidly and had a "heightened sense of nervousness that was not normal." In addition, Appellant's hands were "visibly trembling."  Because Appellant's nervousness and trembling were so pronounced, Trooper Martin inquired whether Appellant had any warrants, but Appellant denied that he did.

When Trooper Martin questioned Appellant about his and Mitchell's trip to Dallas, Appellant could not tell him what time they left for Dallas that day.  However, he advised

4

Trooper Martin that they went to Dallas to "get" a tire and to drive *Mitchell's* aunt to Dallas.[2] The trooper testified that Appellant's explanation was inconsistent with Mitchell's. But he recounted that when he told Appellant that Mitchell said it was Appellant's aunt, Appellant disagreed, and then said, "Well, it's both of our aunts, really."

The evidence showed that neither Mitchell nor Appellant owned the Suburban. Trooper Martin testified that third party vehicles are commonly used to transport illegal drugs for long distances. He further testified that he asked Mitchell why he was driving someone else's vehicle. According to Mitchell, the Suburban was more efficient than his vehicle. Ultimately, Trooper Martin obtained Mitchell's consent to search the vehicle.

Prior to his search, Trooper Martin did not notice any odor of marijuana. However, when he opened one of the back compartments of the Suburban, he found a "brand new roll of cellophane" and two cans of axle grease. Trooper Martin testified that the discovery of these items was significant because cellophane is commonly used to wrap illegal drugs and axle grease is commonly used to mask their odor. But, despite this discovery, Trooper Martin did not find any marijuana or other contraband inside the passenger compartment of the Suburban. It was not until he looked underneath the driver's side dashboard that he "got a big hint of raw marijuana smell—odor." Trooper Martin then opened the hood and found wrapped marijuana bundles inside the engine compartment.

The video from Trooper Martin's patrol car captures the entire interaction between Trooper Martin, Mitchell, and Appellant during the traffic stop. The video is consistent with Trooper Martin's testimony. It shows that Trooper Martin remarked to Mitchell about Appellant's nervousness and reflects that Trooper Martin told Mitchell that Appellant's nervousness was making him nervous. The video also shows that when the trooper returned from the front of the vehicle and ordered both men to get on the ground, neither Mitchell nor Appellant acted surprised.

The marijuana had a net weight of 8.59 pounds. Trooper Martin's testimony confirmed that its street value was worth "quite a bit of money." He testified that when he questioned Mitchell and Appellant about the marijuana, Mitchell remained silent, and Appellant "just said it wasn't his."

---

[2] On cross-examination, the evidence showed that there was a new tire in the back of the Suburban.

5

**Discussion**

Appellant contends there is no evidence that he had "actual knowledge of what, if anything, another person may have placed under the hood" of the Suburban. He further argues that there is an "overwhelming lack of any meaningful evidence that he exercised actual or constructive care, custody, or control over the marijuana." The State asserts that the circumstantial evidence, when viewed in light of the reasonable inferences therefrom, is sufficient to establish that Appellant knowingly possessed the marijuana.

A.  Appellant's Knowledge of Contraband

Consciousness of guilt is one of the enumerated factors shown to link an accused to contraband. *See Evans*, 202 S.W.3d at 162 n.12. Conflicting statements about relevant matters, extreme nervousness, and lack of concern or surprise upon the discovery of contraband indicate consciousness of guilt. *See United States v. Del Aguila-Reyes*, 722 F.2d 155, 158 (5th Cir. 1983) (may infer guilty knowledge from lack of concern and surprise upon being advised illegal drugs discovered); *Lassaint v. State*, 79 S.W.3d 736, 744 (Tex. App.—Corpus Christi 2002, no pet.) ("Excessive nervous behavior and unsettled demeanor may be examples of consciousness of guilt."); *Washington v. State*, 215 S.W.3d 551, 555 (Tex. App.—Texarkana 2007, no pet.).

Here, Appellant's and Mitchell's explanations of "ge[ting]" or "fix[ing]" a tire were similar, but their statements conflicted about whose aunt they drove to Dallas. Appellant's demeanor was odd for a passenger during a traffic stop because his hands were trembling and his breathing was rapid. Courts have recognized that nervousness is a tenuous link to contraband because most people are somewhat nervous when confronted by a police officer. *See Lassaint*, 79 S.W.3d at 744. However, Appellant's nervousness went beyond what is typical for a normal traffic stop, especially for a passenger. *See id.*; *Hernandez v. State*, 867 S.W.2d 900, 905 (Tex. App.—Texarkana 1993, no pet.).[3] Finally, Appellant showed no surprise when Trooper Martin returned from the front of the Suburban, which also indicates a consciousness of guilt. *See Del Aguila-Reyes*, 722 F.2d at 158.

Each of the aforementioned facts supports an inference that Appellant knew marijuana was inside the engine compartment. *See id.*; *Lassaint*, 79 S.W.3d at 744; *Washington*, 215 S.W.3d at 555. However, knowledge of illegality does not mean that Appellant per se engaged

_____

[3] Although Appellant did not flee, his demeanor, when viewed in light of the fact that he had unbuckled his seat belt, suggests that he may have contemplated fleeing from Trooper Martin.

in criminal activity, specifically, possession of marijuana. *See Allen v. State*, 249 S.W.3d 680, 697 (Tex. App.—Austin 2008, no pet.) ("[The] mere presence of an accused at a place where contraband is being possessed or used by others, and even the accused's knowledge of an offense by others, does not constitute joint possession of the contraband.").

B. Appellant's "Control" of Contraband

It is well established that mere presence at the location where drugs are found is insufficient, by itself, to establish actual care, custody, control, or management of those drugs. *See* Tex. Health & Safety Code Ann. § 481.002(38); *Evans*, 202 S.W.3d at 162. But, presence or proximity, when combined with other evidence, either direct or circumstantial, may well be sufficient to establish that element beyond a reasonable doubt. *Id.*

Appellant contends that the only reason he was arrested was because the drugs "had to belong to somebody." To support this argument, he cites Trooper Martin's testimony that he arrested Appellant

> [b]ecause the marijuana's in the—I mean, there's a large sum of marijuana. Somebody put it there. It's in the structure of the vehicle. I mean, you don't borrow somebody's car, and they leave 10 pounds of marijuana in there. That's not—that's not feasible.

Evidence that Mitchell and Appellant were traveling on a "major" drug corridor, from a city known as a "drug hub," in a third party vehicle makes it improbable that the owner of the Suburban simply forgot to remove the marijuana inside the engine compartment prior to lending it. *See Allen*, 249 S.W.3d at 694 ("Where the contraband is [hidden], courts require additional facts and circumstances to prove the knowledge element: consciousness of guilt, conflicting statements, or an implausible account of events."); *see also Washington*, 215 S.W.3d at 554 (noting that observing accused in suspicious area under suspicious circumstances is a link); *Cortez-Balleza v. State*, No. 04-03-00818-CR, 2004 WL 2945680, at \*6 (Tex. App.—San Antonio 2004, pet. ref'd) (mem. op, not designated for publication) (referencing testimony that third party vehicles are often used in transporting drugs).

Appellant concedes that he was in close proximity to the marijuana because he was inside the Suburban just prior to its being discovered. Appellant was also in close proximity to contraband (cellophane and axle grease) as that was found inside the passenger compartment (albeit in the back of the Suburban). *See Acosta v. State*, 429 S.W.3d 621, 630 n.39 (Tex. Crim.

7

App. 2014) (cellophane commonly used to conceal smell and avoid detection of drugs). However, the marijuana, the cellophane, and the axle grease bottles were not necessarily "conveniently accessible" because they were out of Appellant's reach and in enclosed compartments. *See **Robinson v. State***, 174 S.W.3d 320, 326 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd) ("The term 'conveniently accessible' means that the contraband must be within the close vicinity of the accused and easily accessible while in the vehicle so as to suggest that the accused had knowledge of the contraband and exercised control over it.").

### 1. No Evidence of Care, Custody, Control, or Management

In his brief, Appellant lists a number of links that are lacking. We agree the record reflects that (1) the marijuana was not in plain view, (2) Appellant was not under the influence of marijuana, (3) he did not have any contraband or other narcotics on his person, (4) he did not make any incriminating statements, (5) he did not make any furtive gestures, (6) the smell of marijuana was not detectable from anywhere inside the passenger compartment except for underneath the driver's side dashboard, (7) he did not own the Suburban, nor is there any evidence that he ever drove the Suburban, and (8) Appellant did not have any large amounts of cash or any weapons on his person.

The absence of links does not constitute evidence of innocence. *See **Hernandez v. State***, 538 S.W.2d 127, 131 (Tex. Crim. App. 1976). However, we note that the absent links in this case are generally used to support an inference that an accused exercised care, custody, control, or management over a substance.

Our sister courts have found insufficient evidence to support a conviction of a passenger for a possession offense when there was an absence of evidence to show that the accused exercised actual care, custody, control, or management over a substance. The most recent case comes from the Thirteenth Court of Appeals.

In ***Jenkins v. State***, the evidence showed that marijuana was found inside the trunk of a vehicle in which the defendant was a passenger. ***Jenkins v. State***, 76 S.W.3d 709, 715 (Tex. App.—Corpus Christi 2002, pet. ref'd). An investigation of the vehicle's contents revealed that cocaine was hidden underneath the backseat, along with sandwich bags, rubber gloves, and nearly $2,000 in cash. ***Id.*** The court noted the absence of several links that would have indicated the defendant had possession of the marijuana or cocaine: (1) neither the marijuana nor the cocaine was in plain view, (2) the defendant did not own or exercise any control over the

vehicle, (3) the contraband was not in close proximity or conveniently accessible, (4) the odor of marijuana was not detectable without opening the trunk, (5) the defendant possessed no contraband or paraphernalia on his person or in his luggage, and (6) his physical condition did not indicate recent consumption of either marijuana or cocaine. *Id*. at 716–17. The court acknowledged that the amount of marijuana and cocaine was large, but noted that the defendant did not have a large amount of cash, made no furtive gestures or statements linking himself to the contraband, and did not indicate a consciousness of guilt. *Id*. at 717–19. Accordingly, the court held that the evidence did not link the defendant to the contraband in such a matter and to such an extent that it was reasonable to infer he knew of the contraband's existence and exercised control over it. *Id*. at 719.

In *Dixon v. State*, the defendant was a passenger in a vehicle in which fifteen pounds of marijuana was found hidden inside a speaker inside the vehicle's trunk. *See Dixon v. State*, 918 S.W.2d 678, 680 (Tex. App.—Beaumont 1996, no pet.). The evidence showed that when law enforcement officers approached the vehicle to issue a traffic citation, the defendant "was extremely nervous, his breathing was rapid, his hands were shaking[,] and he would not make eye contact." *Id*. When asked where they were going, the driver said they were from Houston and traveling to Louisiana to visit his sick mother. *Id*. However, when the defendant was asked the same question, he told the officers they were traveling to Louisiana to visit the driver's sick sister, and that they were going to be there for three days. *Id*. The insurance on the vehicle was in neither the defendant's nor the driver's name and there was no luggage or clothes in the vehicle. *Id*. Neither man admitted ownership of the marijuana. *Id*.

The defendant challenged the sufficiency of the evidence to prove that he had "actual care, control[, or] management" over the marijuana. *See id*. The only factors linking the defendant to the contraband were his extreme nervousness, the conflicting statements regarding his and the driver's visit, the absence of luggage and clothes, and the fact that the vehicle was borrowed. *Id*. at 681. In reversing the conviction, the Ninth Court of Appeals held that the factors indicating the defendant did not have control of the contraband were more numerous and more convincing: (1) the defendant did not own the vehicle and there was no evidence that he drove it, (2) there was no evidence that any of the trunk's contents belonged to the defendant or that the defendant had access to the trunk, (3) there were no fingerprints on the speaker containing the contraband or on anything else in the trunk, (4) the defendant did not attempt to

9

flee, and made no incriminating statements or furtive gestures, (5) there was no odor of marijuana, no drugs, and no paraphernalia for using the contraband, and (6) the defendant was not under the influence of marijuana at the time of the stop. *Id.* at 681–82. Thus, the court concluded there was no evidence that the defendant had actual care, custody, control, or management over the contraband. *Id.* at 682.

In *Moreno v. State*, four hundred grams of cocaine were found inside a vehicle's engine compartment. *Moreno v. State*, 821 S.W.2d 344, 348 (Tex. App.—Waco 1991, pet. ref'd). The driver and the passenger were jointly tried and convicted for possessing the cocaine. *Id.* The Tenth Court of Appeals affirmed the driver's conviction, but reversed the passenger's. *Id.* at 348–49.

The evidence showed that the driver was known for distributing drugs and had been observed engaging in drug activity on prior occasions. *Id.* at 350. The court concluded that the evidence was sufficient to affirm the driver's conviction because he was driving, maintained insurance, and made several payments on the vehicle in which the cocaine was found. *Id.* at 351. However, the passenger was not connected with the ownership or control of the vehicle, did not attempt to escape, made no furtive gestures or incriminating statements, and was not under the influence of an illegal drug. *See id.* at 352. There was no odor of cocaine in or around the vehicle, and the passenger's relationship with the driver "was not explored." *Id.* The only evidence linking the passenger to the cocaine found inside the engine compartment was .11 grams of cocaine found in the passenger's wallet. *Id.* However, the court held that this was insufficient to link the passenger to the cocaine found in the engine compartment because it was not tested for its purity and thus could not be connected with the larger amount of cocaine. *Id.*

### 2. Circumstantial Evidence of Care, Custody, Control, or Management

The absence of links in *Jenkins*, *Dixon*, and *Moreno* amounted to no evidence of care, custody, control, or management of the contraband. *See generally Jenkins*, 79 S.W.3d 709; *Dixon*, 918 S.W.2d 678; *Moreno*, 821 S.W.2d 344. The First Court of Appeals reached the same conclusion in *Blackman v. State*, but the Texas Court of Criminal Appeals disagreed. *See Blackman v. State*, 349 S.W.3d 10, 22 (Tex. App.—Houston [1st Dist.] 2009), *rev'd*, 350 S.W.3d 588 (Tex. Crim. App. 2011) (*Blackman I*). The court of appeals held there was no evidence that the defendant exercised control over the contraband because the State's case "rests entirely on [the accused's] presence in the van." *Blackman I*, 349 S.W.3d at 22.

The court of criminal appeals noted testimony from officers regarding conduct common to drug traffickers as evidence supporting an inference that the defendant exercised care, custody, control, or management over the contraband. *See* ***Blackman v. State***, 350 S.W.3d 588, 592 (Tex. Crim. App. 2011) (***Blackman II***). The defendant argued that he was an innocent bystander to a narcotics transaction. *Id.*

The evidence showed that the defendant and two other men were in a van and had been under surveillance for two days when investigators witnessed a drug transaction between the van's driver and individuals in a Toyota. *Id.* at 590–91. The van had been rented in St. Petersburg, Florida, which was several hundred miles from where they were under surveillance in Pasadena, Texas. *Id.* at 589. When law enforcement stopped the van for a traffic violation, the defendant was in the front passenger seat, and had a large amount of cash on his person. *Id.* at 591–92.

One of the investigators testified that the men inside the van (including the defendant) acted "like narcotic traffickers." *Id.* at 592. The evidence showed that it was common for drug traffickers to travel from Florida to the Pasadena area to purchase narcotics and that it was also common to use rental vehicles on these trips because rental vehicles are not subject to forfeiture if the traffickers are caught. *Id.* at 589. The testimony also showed that drug traffickers commonly use "props" to disguise illegal activity and that props were found inside the van. *See id.* at 592. Specifically, investigators found a family reunion invitation with no time, date, or location for the reunion, and a Bible with a name embossed on it that was not the name of any of the three men. *Id.* Finally, the State presented evidence that it is uncommon for narcotics traffickers to bring innocent-bystander witnesses to large scale narcotics transactions. After citing this evidence, the court of criminal appeals held as follows:

> A jury could reasonably find that appellant and the other two men traveled hundreds of miles together for the common purpose of purchasing three kilograms of cocaine. Their behavior during the time that they were under surveillance by the police, during which they did practically everything together, was consistent with this purpose. A jury could reasonably find that [the driver] would not bring two innocent-bystander witnesses hundreds of miles to a large-scale narcotics transaction. A jury could also reasonably rely on the opinion of an experienced narcotics investigation that appellant and the other two men acted like narcotics traffickers. These "independent facts and circumstances" affirmatively link appellant to the contraband.

*Id.* at 595–96.

11

C.  Speculation of Care, Custody, Control, or Management

Like the men in **Blackman II**, Appellant and Mitchell were in an area known to be a drug corridor.  *See id.* at 589-91.  Although they were not arrested in an area known for narcotics transactions, their statements to Trooper Martin confirmed that they had left a known drug hub.  *See id.*  Similar to **Blackman II**, Mitchell and Appellant were traveling in a borrowed vehicle, which is also a common practice for drug traffickers who are traveling long distances, and the amount of contraband discovered was large.[4]  *See id.*

However, unlike **Blackman II**, Mitchell and Appellant had not been under surveillance prior to their traffic stop, and Trooper Martin did not witness either of the men engage in a major drug transaction.  *See id.*  We do not question the credibility of Trooper Martin's testimony.  We also recognize that the evidence showed that his suspicion of criminal activity was correct.  *See* **Dixon**, 918 S.W.2d at 681.

The borrowed Suburban, presence on Interstate 20, Mitchell's and Appellant's conflicting statements, and Appellant's nervousness and lack of surprise are links showing Appellant's knowledge of the contraband inside the Suburban's engine compartment.  However, unlike **Blackman**, there is no circumstantial evidence in this case to show that Appellant exercised care, custody, control, or management over the marijuana—he was a passenger, he was not under the influence of marijuana, he made no statements linking himself to the marijuana, he possessed no other contraband or paraphernalia on his person, he made no incriminating statements, and law enforcement did not witness a drug transaction in Appellant's presence.  *Compare* **Jenkins**, 76 S.W.3d at 716–19 and **Dixon**, 918 S.W.2d at 681–82 *with* **Blackman II**, 350 S.W.3d at 595-96.

To conclude that Appellant exercised actual care, custody, control, or management over the marijuana, we would be required to speculate as to the meaning of the facts and evidence presented.  *See* **Hooper**, 214 S.W.3d at 15.  Although such a conclusion would not seem unreasonable, it is nevertheless impermissible.  *See id.*

**Conclusion**

Our law requires proof of actual care, custody, control, or management to show possession.  *See* TEX. HEALTH & SAFETY CODE ANN. § 481.002(38); **Poindexter**, 153 S.W.3d at 405.  The independent facts and circumstances show that the element of possession was proved

---

[4] We do not categorize the tire found in the backseat as a "prop" used to disguise illegal activity because there was no such testimony presented at trial.

by nothing more than Appellant's fortuitous proximity to the drugs. *See **Evans***, 202 S.W.3d 161–62. It is this type of situation that the affirmative links rule sought to prevent. *See **id**.*

After viewing the evidence in the light most favorable to the verdict, we conclude that no rational trier of fact could have found the possession element of the offense beyond a reasonable doubt. *See **Brooks***, 323 S.W.3d at 899. Accordingly, we sustain Appellant's sole issue.

## DISPOSITION

Having sustained Appellant's sole issue, we ***reverse*** the trial court's judgment and ***render*** a judgment of acquittal.

<u>GREG NEELEY</u>
Justice

Opinion delivered October 14, 2015.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

### OCTOBER 14, 2015

### NO. 12-15-00073-CR

**YAGO SANTAIN FOUNTAIN,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 114th District Court

of Smith County, Texas (Tr.Ct.No. 114-0896-14)

THIS CAUSE came to be heard on the appellate record and the briefs filed herein, and the same being considered, because it is the opinion of this court that there was error in the judgment of the court below, it is ORDERED, ADJUDGED and DECREED by this court that the judgment of the trial court be **reversed** and a judgment of acquittal be, and the same is, hereby **rendered** herein in accordance with the opinion of this court; and that this decision be certified to the court below for observance.

Greg Neeley, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*