Jose Raymond MENDOZA, Appellant,

v.

STATE of Texas, Appellee.

No. 04–00–00099–CR.

Court of Appeals of Texas,
San Antonio.

Sept. 6, 2000.

Vincent D. Callahan, San Antonio, for appellant.

Daniel Thornberry, Asst. Crim. Dist. Atty., San Antonio, for Appellee.

Sitting: PHIL HARDBERGER, Chief Justice, TOM RICKHOFF, Justice, SARAH B. DUNCAN, Justice.

**OPINION**

Opinion by: PHIL HARDBERGER, Chief Justice.

Jose Raymond Mendoza ("Mendoza") pled nolo contendere to a charge of cocaine possession. He claims, however, that he did not give the police consent to search his truck for contraband. Mendoza asks us to consider whether the trial court abused its discretion when it concluded that he understood the police officer's request to search his truck. We hold that the trial court did not abuse its discretion in concluding that Mendoza gave consent to search the truck.

We affirm the judgment of the trial court.

**BACKGROUND**

Officer Michael Helle ("Helle") received a call from his dispatcher regarding a disturbance at a nightclub. Although Helle did not see anyone fighting when he ar-

rived, he observed a group of men gathered around a pickup truck, some of whom were consuming beer. Helle learned that the truck belonged to Mendoza.

Helle asked Mendoza, first in English and then in Spanish, for permission to search the truck. After obtaining consent, Helle began searching on the driver's side. He soon discovered a rifle between the front seat and the console. While Helle was securing the rifle, another officer found a bag of cocaine near the front console of the pickup. Mendoza denied that the drugs belonged to him. He was later arrested for possession of cocaine.

Mendoza moved to suppress the bag of cocaine, claiming that he did not understand Helle's request to search the truck. He denied that he had given consent to the police to search his truck. At the heart of this appeal is whether the trial court erred in finding that Mendoza, who speaks very little English, understood Helle's question, who does not speak Spanish fluently:

> DEFENSE COUNSEL: Can you please repeat exactly what you said [to Mendoza] so the court interpreter can interpret it, please?
>
> . . . .
>
> THE COURT: Go ahead. The court reporter does not take the Spanish so he's going to have to repeat the—question—answer.
>
> OFFICER HELLE: (Speaks Spanish). I asked him please—
>
> THE INTERPRETER: (Speaks Spanish). I want the—I want the dress for the truck.
>
> DEFENSE COUNSEL: Okay. And what did he respond?
>
> OFFICER HELLE: Well, he didn't let me finish (speaks Spanish). Do not—do not have drugs, pistols or nothing on the truck, is it fine or no—

THE INTERPRETER: Interpreter correction—or not.

DEFENSE COUNSEL: Okay. And what did he respond?

OFFICER HELLE: He said "si". Yes.

DEFENSE COUNSEL: Okay. And that's what you interpreted as consent?

OFFICER HELLE: Yes.

. . . .

THE STATE: Officer Helle, what does "vista" mean in Spanish?

. . . .

OFFICER HELLE: To look. To see.

. . . .

THE STATE: Did you use the word "vista" at the scene when you asked to look?

. . . .

OFFICER HELLE: Yes, sir.

THE STATE: Okay. You didn't ask for a dress, did you?

OFFICER HELLE: No, sir.

THE STATE: And would it surprise you to learn that the word for dress in Spanish is "vestir"?

OFFICER HELLE: Yes, sir.

According to the court interpreter, "vista" means "view" and "vestir" means "dress." The interpreter testified that they have a similar sound.

The trial court found that the Helle's inquiry in Spanish was sufficient for Mendoza to understand that an answer of "si" ("yes") would permit the police to search his truck:

DEFENSE COUNSEL: Your Honor, I think we can make a ruling now. There's been no permission given to look inside the truck. There was no warrant. There wasn't an arrest. There's no—we asked [sic] that the evidence be suppressed.

THE COURT: On the grounds?

DEFENSE COUNSEL: No permission given to look inside the truck. He has a right not to have his truck searched.

The officer never asked for permission to look inside the truck.

THE COURT: Well, he may not have asked it in the proper and correct Spanish like this interpreter did, but—and I—I'll beg to differ with the officer [sic], and he may have heard differently, but I heard "vista". I didn't hear "vestir". I heard "vista." He may have heard something else because he has got his things on and I don't know, but that's what I heard. And I agree with you that that is not proper, correct Castillian or Spanish, whatever you want to. But from the surrounding things in asking him is this your truck and then he asked him the questions as reflected by the record and the man said, yes. . . .

The trial court permitted Mendoza to testify that he did not understand the officer was asking for consent to search the truck. The court continued:

THE COURT: Well, there's nothing vague about the consent about him giving the consent [sic]. The question here is whether he understood it or not, and whether the officer's broken Spanish he understood or not. But as far as him and the officer saying he said yes, so her went and looked. I mean his consent is not vague to me— I mean he said yes. . . . I understood what the officer meant. . . . The officer says he said yes so felt [sic] that he had consent.

Mendoza later pled nolo contendere to a charge of attempted possession of cocaine (less than one gram). The trial court imposed a fine on Mendoza and sentenced him to eleven months confinement, probated for two years.

## Discussion

### 1. *Standard of Review*

A trial court is given wide discretion in determining the admissibility of evidence. *See Breeding v. State*, 809 S.W.2d 661, 663 (Tex.App.-Amarillo 1991,

pet. ref'd). We review the trial court's exclusion of evidence under an abuse of discretion standard. *See id.* A trial judge has not abused his discretion unless he has "acted arbitrarily and unreasonably, without reference to any guiding rules or principles." *See id.* We recognize the trial court's broad discretion in determining the admissibility of evidence and unless a showing of abuse exists, we will not disturb the trial court's decision. *See Guzman v. State,* 955 S.W.2d 85, 89 (Tex.Crim. App.1997). If the government obtains evidence improperly, however, the trial court must suppress the evidence; it has no discretion in the matter. *See* TEX.CODE CRIM. PROC. ANN. art. 38.23(a) (Vernon Supp.2000); *Polk v. State,* 738 S.W.2d 274, 276 (Tex.Crim.App.1987). In order to determine that the cocaine found in Mendoza's truck was admissible, the trial court had to conclude that it was the product of a legal search.

## 2. Was the Search Legal?

The Fourth Amendment guarantees people the right to be "secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. As a result, searches made without warrant are generally per se unreasonable. *See Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). When a search without a warrant is made, the state bears the burden to show that the search falls within one of the narrow exceptions to the warrant requirement in order for the search to be constitutionally permissible. *See Moreno v. State,* 821 S.W.2d 344, 349–50 (Tex.App.-Waco 1991, pet. ref'd).

An exception to the warrant requirement is a search conducted by consent. *See Meeks v. State,* 692 S.W.2d 504, 509 (Tex.Crim.App.1985). To show that the search was made with the property owner's consent, the state must prove by clear and convincing evidence, based on the totality of the circumstances, that the

defendant gave consent freely and voluntarily. *See id.* at 509–10. A search is valid if, in light of all the circumstances, the officers' belief that they had consent to search was objectively reasonable. *See Illinois v. Rodriguez,* 497 U.S. 177, 188, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990). Officers need not inform an individual that he has the right to refuse consent. *See Meeks,* 692 S.W.2d at 510.

In *Moreno,* the police officer stopped a car driven by one of the defendants. *See Moreno,* 821 S.W.2d at 350. The officer approached the vehicle and asked the driver, in English, for identification. *See id.* The driver complied, but the passenger did not have any identification. *See id.* at 350–51. The officer then requested, in Spanish, permission to search the car as follows: "Los da permiso de *esculcar* [sic] su automobile." *Id.* at 351. The driver responded, "Si," that is, "yes." *Id.* The record in *Moreno* showed that although "esculcar" is not a Spanish word, "escular" is a Spanish word that means "to search or look for." *Id.* The officer testified that although he used "esculcar," he had "no doubt ... that [the driver and passenger] understood what the [the officer] said." *Id.* As a result of the search, police officers seized 745 grams of cocaine. *See id.* The court of appeals found that the driver gave free and voluntary consent and that officer's belief that he had permission to search the vehicle was objectively reasonable. *See id.*

The facts of the present case are similar to those of *Moreno.* Here, Helle asked Mendoza in Spanish if Mendoza owned the vehicle. Mendoza answered either "si" or "yes" and either nodded or made an affirmative gesture. Helle then sought consent to search the vehicle. Helle's communication with Mendoza, like that in *Moreno,* may not have been perfect. Based on the totality of the circumstances, however, we find that Mendoza freely and voluntarily consented to the search of his truck. We find that Helle's belief that he had permission to search the truck was ob-

jectively reasonable. We hold that the trial court did not err in overruling Mendoza's motion to suppress the bag of cocaine that the police found in his truck.

### CONCLUSION

We affirm the trial court's judgment.