# NO. 12-09-00272-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *MICHAEL BENJAMIN CAUDILL,* *APPELLANT* | § | *APPEAL FROM THE 114TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT OF* |
| *THE STATE OF TEXAS,* *APPELLEE* | § | *SMITH COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Michael Benjamin Caudill appeals his conviction for aggravated sexual assault of a child, for which he was sentenced to imprisonment for fifty years and a ten thousand dollar fine. In two issues, Appellant argues that (1) the trial court erred in determining that a child witness was competent to testify and (2) the evidence is factually insufficient to support the trial court's judgment. We affirm.

### BACKGROUND

Appellant, his wife, and his two children attended a party hosted by Michael Williams. Several others were present, including A.L., a three year old child. Early on the morning of July 27, 2008, A.L. was in the living room watching a movie with two older children, N.Y. and S.C., while several adults were talking outside of the house.

Appellant entered the house, grabbed N.Y., and attempted to take her toward the bathroom. When N.Y. broke free from Appellant, he grabbed A.L. and took her into the bathroom. N.Y. and S.C. told A.L.'s parents what had occurred. Several people knocked on the locked bathroom door, and A.L.'s parents attempted to force the door open. However, Appellant would not open the door. After several minutes, Appellant opened the door and gave A.L. to her

mother. A.L.'s mother asked A.L. what happened in the bathroom. A.L. said that Appellant "licked her tuttut."[1] Thereafter, A.L.'s mother contacted the police.

A.L. was taken to the hospital and underwent a sexual assault examination. During the examination, several samples of forensic evidence were collected from A.L.'s vagina and sent for testing. Forensic material was also collected from Appellant. Testing of the DNA collected from A.L. found the presence of male DNA from which Appellant could not be excluded as a potential donor.

Appellant was charged by indictment with aggravated sexual assault of a child under six years old. Appellant pleaded "not guilty," and the matter proceeded to a bench trial. Ultimately, the trial court found Appellant "guilty" as charged. Thereafter, a trial on punishment was conducted, after which the trial court sentenced Appellant to imprisonment for fifty years and a ten thousand dollar fine. This appeal followed.

## COMPETENCY OF CHILD WITNESS

In his first issue, Appellant argues that the trial court abused its discretion in finding that A.L. was competent to testify.

### Standard of Review

As a general rule, every witness is competent to testify. *See* TEX. R. EVID. 601(a). A child is competent to testify unless it appears to the trial court that the child does not possess sufficient intellect to relate the transaction about which the child will testify. *See* TEX. R. EVID. 601(a)(2); *Dufrene v. State*, 853 S.W.2d 86, 88 (Tex. App.–Houston [14th Dist.] 1993, pet. ref'd). The trial court determines whether a child is competent to testify based on the capacity of the child to (1) observe intelligently the events in question at the time of the occurrence, (2) recollect the events, and (3) narrate the events. *Dufrene*, 853 S.W.2d at 88–89.

Generally, a trial court is given wide discretion in determining admissibility of evidence. *See Mendoza v. State*, 30 S.W.3d 528, 530 (Tex. App.–San Antonio 2000, no pet.). We review a trial court's decision that a witness is competent to testify for an abuse of discretion. *See Broussard v. State*, 910 S.W.2d 952, 960 (Tex. Crim. App. 1995). As part of our review, we consider all of the trial testimony as well as the preliminary competency examination of the child

---

[1] The record reflects that A.L. called her vagina a "tuttut."

witness to determine if the trial court abused its discretion. *See **Clark v. State***, 558 S.W.2d 887, 890 (Tex. Crim. App. 1977). Inconsistencies or conflicts in a child's testimony do not automatically render the child incompetent to testify, but instead affect the weight to be given to the child's testimony. *See **Upton v. State***, 894 S.W.2d 426, 429 (Tex. App.–Amarillo 1995, pet. ref'd).

**Waiver**

To preserve a complaint for appellate review, a party must present the complaint to the trial court with sufficient specificity to make the trial court aware of the complaint. *See* TEX. R. APP. P. 33.1. Rule 33.1 ensures that the trial court had the opportunity to correct its own errors before a party seeks appellate review. *See **Vidaurri v. State***, 49 S.W.3d 880, 886 (Tex. Crim. App. 2001). For an objection to meet the "sufficient specificity" requirement, the party must "let the trial judge know what he wants, why he thinks himself entitled to it, and . . . do so clearly enough for the judge to understand him at a time when the trial court is in a proper position to do something about it." ***Lankston v. State***, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992). Unless a party obtains a running objection or requests a hearing outside the presence of the jury, a party is required to continue to object each time inadmissible evidence is offered. *See **Martinez v. State,*** 98 S.W.3d 189, 193 (Tex. Crim. App. 2003).

Although the trial court conducted a brief hearing to determine if A.L. was competent to testify, Appellant did not immediately object to A.L.'s testimony. In fact, Appellant did not object to A.L.'s testimony until the conclusion of his cross examination of A.L. At this time, Appellant's attorney stated to the court as follows:

> And at this time, I'm going to object to any proffered testimony by this witness. I believe that she's incompetent to testify. She is not testifying to anything that she directly remembers.
>
> She's testifying to something that someone told her -- her mother, someone from the District Attorney's office -- and as a result thereof, I don't think that it's – her testimony can be relied upon. She is much too young.
>
> And though she's testifying today that this man licked her tutu, when she was asked that question a couple of months after it occurred, she indicated that nobody had licked her tutu.
>
> So I believe that she has been questioned, she has been given information that would lead her to make – to testify as she did today. I do not believe that it's a result of anything that she recollects or remembers.

The State offered its response to Appellant's arguments. In reply, Appellant's attorney stated as follows:

> Judge, that was – he's probably right. I probably should have objected earlier because one of the questions you asked her relative to, "Is it bad to tell a lie," well, that's kind of a leading question and it kind of suggests what the answer is to that question.
>
> But she was having real difficulty even answering the questions that you posed before she proffered her testimony.
>
> But after she has testified the way she has, suggesting that others have told her what to say, that's the basis of my objection. But perhaps it has to do more with credibility that it does with competency.

The trial court did not rule on Appellant's objection, but instead permitted the State to proceed with its redirect examination of A.L. Thereafter, Appellant conducted additional cross examination of A.L, but did not assert any further objections related to A.L.'s competency. Based on the record before us, we conclude that Appellant did not preserve the issue he now raises concerning the trial court's decision to permit A.L. to testify. *See* TEX. R. APP. P. 33.1.

Yet, even had Appellant preserved error on this issue, the result would not differ. A.L.'s testimony contained conflicts as to where the assault occurred. However, issues such as these do not make A.L. an incompetent witness. *See **Dufrene***, 853 S.W.2d at 89. A.L. consistently testified that Appellant licked her "tuttut." She began making that claim the morning of the incident and continued to make the same claim at trial. Further, in response to the trial court's initial questions, A.L. indicated knowledge of the difference between the truth and a lie.

Appellant notes that when A.L. was asked if she understood the difference between the truth and a lie, she responded, "It's a lie." However, a review of A.L.'s response in the context of the entire record adequately explains her statement. A.L. was holding a red fox. The trial court asked A.L., "If I said the fox was green, would that be true or not true?" A.L. responded, "Not true." The trial court continued asking questions about the fox, finally inquiring, "The fox is green, that's a lie, right?" When A.L. nodded her head in response, the trial court asked for a verbal response, to which A.L. replied, "Yes." The trial court then stated, "Okay. Do you understand the difference between the truth and a lie?" A.L. responded, "It's a lie." From our review of the record, we conclude that A.L. could have reasonably believed that the trial court was still questioning her about whether the fox was green. Nonetheless, the trial court persisted

in its inquiry of A.L. about her duty to tell the truth. Only after A.L. acknowledged the necessity of responding to questions truthfully did the trial court permit her to testify. Therefore, we conclude that even had Appellant preserved error on this issue, the trial court did not abuse its discretion in determining that A.L. had the capacity to observe, recollect, and truthfully describe the events that were the basis of her testimony. Appellant's first issue is overruled.

## FACTUAL SUFFICIENCY

In his second issue, Appellant argues that the evidence is factually insufficient to support the trial court's judgment. Specifically, Appellant contends the evidence is factually insufficient because A.L. testified that Appellant "licked her tuttut," but never identified what part of her body was her "tuttut."

When an appellant raises a contention that the evidence is not factually sufficient to support the trial court's judgment, we must first assume that the evidence is legally sufficient under the *Jackson*[2] standard. *See Clewis v. State*, 922 S.W.2d 126, 134 (Tex. Crim. App. 1996). We then consider all of the evidence weighed by the factfinder that tends to prove the existence of the elemental fact in dispute and compare it to the evidence that tends to disprove that fact. *See Santellan v. State*, 939 S.W.2d 155, 164 (Tex. Crim. App. 1997). We do not view the evidence "in the light most favorable to the prosecution." *Cain v. State*, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997). Instead, we look at all evidence in a neutral light and will reverse only if (1) the evidence is so weak that the finding seems clearly wrong and manifestly unjust or (2) considering conflicting evidence, the finding, though legally sufficient, is nevertheless against the great weight and preponderance of the evidence. *See Watson v. State*, 204 S.W.3d 404, 414–15 (Tex. Crim. App. 2006). In our review, we must consider the evidence that the appellant claims most undermines the jury's verdict. *Sims v. State*, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003). We cannot declare that a conflict in the evidence justifies a new trial simply because we may disagree with the factfinder's resolution of that conflict. *See Watson*, 204 S.W.3d at 417. Nor can we conclude a finding is "clearly wrong" or "manifestly unjust" simply because, on the quantum of evidence admitted, we would have voted differently had we been the factfinder. *See id.* Rather, before ordering a new trial, we must first be able to say, with some

---

[2] *See Jackson v. Virginia*, 443 U.S. 307, 315–16, 99 S. Ct. 2781, 2786–87, 61 L. Ed. 2d 560 (1979).

objective basis in the record, that the great weight and preponderance of the evidence contradicts the verdict. *See **id.***

In the instant case, Appellant argues that A.L.'s testimony is of no effect because she does not identify what she means by the word "tuttut." However, A.L.'s parents both testified that A.L. called her vagina a "tuttut." This evidence is reinforced by A.L.'s parents' behavior after retrieving A.L. from Appellant. A.L. told her mother that Appellant had "licked her tuttut." As a result, A.L.'s mother then examined A.L.'s vagina. Further, physical evidence specifically linking Appellant to the aggravated sexual assault of A.L. was recovered from A.L.'s vagina. From such evidence, the factfinder could have reasonably concluded that Appellant sexually assaulted A.L. by licking her vagina.

We have reviewed the record in its entirety. Having done so, we cannot conclude that the great weight and preponderance of the evidence contradicts the verdict or that the jury's finding of "guilty" is "clearly wrong" or "manifestly unjust." Therefore, we hold that the evidence is factually sufficient to support the trial court's judgment. Appellant's second issue is overruled.

## DISPOSITION

Having overruled Appellant's first and second issues, we ***affirm*** the trial court's judgment.

**BRIAN HOYLE**
Justice

Opinion delivered May 5, 2010.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(DO NOT PUBLISH)