ACCEPTED
02-16-00386-CR
SECOND COURT OF APPEALS
FORT WORTH, TEXAS
12/21/2017 4:53 PM
DEBRA SPISAK
CLERK

Oral argument requested.

**CAUSE NO. 02-16-00386-CR**

RECEIVED IN
2nd COURT OF APPEALS
FORT WORTH, TEXAS

12/21/2017 4:53:44 PM

DEBRA SPISAK
Clerk

# IN THE COURT OF APPEALS
# FOR THE SECOND DISTRICT OF TEXAS
# FORT WORTH

CHASE MATHEW KARRENBROCK

*Appellant,*

V.

THE STATE OF TEXAS,

*State.*

## Brief of Appellant

Jeff Springer
State Bar No. 18966750
Aubry L. Dameron
State Bar No. 24093766
SPRINGER & LYLE, LLP
1807 Westminster
Denton, TX  76205
940.387.0404 (ph)
940.383.7656 (fax)
jeff@springer-lyle.com

Attorneys for Appellant

## Identity of Parties and Counsel

Mr. Chase Mathew Karrenbrock
SO #180532                                Appellant (Defendant below)
Denton County Jail, 127 N Woodrow Ln
Denton, TX 76205


Mr. Stephen Wohr, Esq.
State Bar No. 21844250
Lindsey Pruitt
State Bar No. 24050179                    Attorney for Appellant below
1417 E. McKinney, Suite 110
Denton, TX 76209


Mr. Jeff Springer, Esq.
Texas Bar No. 18966750
Ms. Aubry L. Dameron, Esq.
Texas Bar No. 24093766                    Attorney for Appellant on
1807 Westminster                          appeal
Denton, TX  76205
940.387.0404 (ph.)
940.383.7656 (fax)


The State of Texas                        Appellee (the State below)


Mr. Matthew Wiebe, Esq.
Texas Bar No. 24047101
Denton Co. Crim. Ass't Dist. Attorney
Mr. Dustin Gossage, Esq.
Texas Bar No.  24045116                   Attorney for the State
Denton Co. Crim. Ass't Dist. Attorney
1450 E. McKinney St. Suite 3100
Denton, Texas 76209

# Table of Contents

Identity of Parties and Counsel ............................................................................2

Table of Contents ..................................................................................................3

Index of Authorities ..............................................................................................4

Statement of the Case ............................................................................................7

Statement Regarding Oral Argument .....................................................................7

Issues Presented .....................................................................................................8

ISSUE 1:  Did the trial court violate Appellant's Eighth Amendment right to be free from cruel and unusual punishment by imposing a sixty year sentence for a first felony offense involving no physical or bodily injury? ...........................8

ISSUE 2:  Did the trial court abuse its discretion by focusing on the hotel incident to the exclusion of all other factors in evaluating whether Appellant's sentence was cruel and unusual under the modified *Solem* test adopted by the Texas Court of Criminal Appeals in *State v. Simpson*? ..............................................8

ISSUE 3:  Did the trial court abuse its discretion by failing to properly apply the modified *Solem* test adopted by the Texas Court of Criminal Appeals in *State v. Simpson*? ..................................................................................................8

ISSUE 4:  Did the trial court err by failing to properly apply the modified *Solem* test adopted by the Texas Court of Criminal Appeals in *State v. Simpson*? ...8

ISSUE 5:  Did the trial court violate due process by considering the extraneous offense to assess punishment? .......................................................................8

ISSUE 6:  Did the trial court violate due process by tripling Defendant's sentence because of a single unadjudicated extraneous bad act that alone carried at worst a maximum 1 year sentence? ..........................................................8

Statement of Facts ..................................................................................................8

Summary of the Argument .....................................................................................11

Argument and Authorities ......................................................................................12

ISSUE 1 (Restated):  Did the trial court violate Appellant's Eighth Amendment right to be free from cruel and unusual punishment by imposing a sixty year sentence for a first felony offense involving no physical or bodily injury? ............12

   A.    Standard of Review ....................................................................................12

   B.    The trial court's sentence is grossly disproportionate, meeting the "gateway" inquiry. ..............................................................................................14

ISSUE 2 (Restated): Did the trial court abuse its discretion by focusing on the hotel incident to the exclusion of all other factors in evaluating whether Appellant's sentence was cruel and unusual under the modified *Solem* test adopted by the Texas Court of Criminal Appeals in *State v. Simpson*? ...................19

ISSUE 3 (Restated): Did the trial court abuse its discretion by failing to properly apply the modified *Solem* test adopted by the Texas Court of Criminal Appeals in *State v. Simpson*? ....................................................................19

ISSUE 4 (Restated): Did the trial court err by failing to properly apply the modified *Solem* test adopted by the Texas Court of Criminal Appeals in *State v. Simpson*? ........................................................................................20

    A.    Standard of review ........................................................................20

    B.    The trial court abused its discretion by failing to apply the modified Solem test. ..............................................................................21

    C.    The trial court abused its discretion by failing to use objective, guiding principles in sentencing. ..................................................22

    D.    The trial court's abuse of discretion in sentencing was harmful ................24

ISSUE 5 (Restated): Did the trial court violate due process by considering the extraneous offense to assess punishment? .........................................25

ISSUE 6 (Restated): Did the trial court violate due process by tripling Defendant's sentence because of a single unadjudicated extraneous bad act that alone carried at worst a maximum 1 year sentence? ................................25

PRAYER ..................................................................................................28

CERTIFICATE OF SERVICE ................................................................29

CERTIFICATE OF COMPLIANCE .........................................................30

**Index of Authorities**

**Cases**

*Adames v. State*, 353 S.W.3d 854, 860 (Tex. Crim. App. 2011) ..................................... 26
*Adetomiwa v. State,* 421 S.W.3d 922, 928 (Tex. App.—Fort Worth 2014, no pet.) .................... 12
*Apprendi v. New Jersey*, 530 U.S. at 476, 120 S. Ct. at 2355....................................... 26
*Apprendi v. New Jersey*, 530 U.S. at 483-84 ......................................................... 28
*Eddings v. Oklahoma*, 455 U.S. 104, 115, 102 S. Ct. 869, 877, 71 L. Ed. 2d 1 (1982) ............... 15
*Enmund v. Florida*, 458 U.S. 782, 798, 102 S. Ct. 3368, 3377, 73 L. Ed. 2d 1140 (1982).......... 14
*Glover v. United States,* 531 U.S. 198, 200, 202, 121 S.Ct. 696, 148 L.Ed.2d 604 (2001).......... 25
*Glover v. United States*, 531 U.S. at 203, 121 S. Ct. at 700 ....................................... 25
*Graham v. Florida*, 560 U.S. 48, 60, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010)......................... 21
*Green v. State,* 934 S.W.2d 92, 101-02 (Tex. Crim. App.1996), *cert. denied,* 520 U.S. 1200, 117

S.Ct. 1561, 137 L.Ed.2d 707 (1997) ....................................................................... 23

*Haley,* 173 S.W.3d at 515 ....................................................................................... 23

*Hammer v. State*, 461 S.W.3d at 304 ....................................................................... 17

*Harmelin v. Michigan,* 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991) ........................ 13

*Harrington v. State*, 2-08-423-CR, 2010 WL 1137046, at *2 ..................................................... 24

*Harrington v. State*, 2-08-423-CR, 2010 WL 1137046, at *2 (Tex. App.—Fort Worth Mar. 25, 2010, no pet.) .............................................................................................................. 24

*Henry v. State*, 02-13-00555-CR, 2015 WL 1407888 (Tex. App.—Fort Worth Mar. 26, 2015, no pet.) ..................................................................................................................... 18

*Huizar v. State*, 12 S.W.3d at 482 ........................................................................... 24

*Jackson v. State*, 680 S.W.2d 809, 814 (Tex. Crim. App. 1984) ................................ 22

*Johnson v. State*, 176 S.W.3d at 98 ........................................................................ 28

*Lampkin v. State*, 470 S.W.3d 876, 917 (Tex. App.—Texarkana 2015, pet. ref'd) ...................... 24

*Lampkin v. State*, 470 S.W.3d at 918 ...................................................................... 25

*Lawrence v. State,* 420 S.W.3d 329, 333 (Tex. App.—Fort Worth 2014, pet. ref'd) ................... 13

*Lineberger v. State*, 02-12-00286-CR, 2013 WL 1666864 (Tex. App.—Fort Worth Apr. 18, 2013, pet. ref'd) ............................................................................................................. 18

*McGruder v. Puckett*, 954 F.2d 313 ........................................................................ 17

*McGruder v. Puckett*, 954 F.2d 313, 316 (5th Cir. 1992) ........................................ 17

*McGruder v. Puckett,* 954 F.2d 313, 316 (5th Cir.), *cert. denied,* 506 U.S. 849, 113 S.Ct. 146, 121 L.Ed.2d 98 (1992) .................................................................................................. 13

*McGruder v. Puckett*, 954 F.2d 313, 316 (5th Cir.1992) ......................................... 21

*Mitchell v. State,* 931 S.W.2d 950, 953 (Tex. Crim. App. 1996) ............................. 23

*Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990), *on reh'g* (June 19, 1991). 20

*Montgomery v. State,* 810 S.W.2d 372, 380 (Tex. Crim. App.1990) (op. on reh'g) ................... 23

*Moore v. State*, 54 S.W.3d 529, 541–42 (Tex. App.—Fort Worth 2001, pet. ref'd) ................. 14

*Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003) ................................. 20

*Ortega v. State,* 126 S.W.3d 618, 622 (Tex. App.--Houston [14th Dist.] 2004, pet. ref'd) ......... 23

*Reyes v. State*, No. 08-15-00311-CR, 2017 WL 1164592, at *4 (Tex. App. Mar. 29, 2017 pet. ref'd) .................................................................................................................... 13

*Roper v. Simmons*, 543 U.S. 551, 569, 125 S. Ct. 1183, 1195, 161 L. Ed. 2d 1 (2005) .............. 15

*Rummel v. Estelle,* 445 U.S. 263, 100 S. Ct. 1133 , 63 L. Ed. 2d 382 (1980) ............... 17

*Smith v. State*, 61 Tex. Crim. 349, 351, 135 S.W. 152, 153 (1911) .......................... 27

*Smith v. State*, 61 Tex. Crim. at 351, 135 S.W. at, 153 ........................................... 27

*Solem v. Helm*, 463 U.S. 277, 278, 103 S. Ct. 3001, 3003, 77 L. Ed. 2d 637 (1983) .............. 17

*Solem v. Helm*, 463 U.S. at 278, 103 S. Ct. at 3003 ............................................... 14

*Solem v. Helm.* 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983) ...................... 13

*State v. Medrano,* 127 S.W.3d 781, 791 (Tex. Crim. App. 2004) ............................. 22

*State v. Simpson*, 488 S.W.3d 318, 323 (Tex. Crim. App. 2016) ............................. 14

*State v. Simpson*, 488 S.W.3d 318, 323 (Tex.Crim.App. 2016) ............................... 12

*State v. Simpson*, 488 S.W.3d at 323 .............................................................. 17, 21

*State v. Simpson, ibid.* ........................................................................................... 13

*Taylor v. State*, 02-09-00325-CR, 2010 WL 4880696 (Tex. App.—Fort Worth Nov. 18, 2010, no pet.) ..................................................................................................................... 18

*U.S. v. Solem* ...................................................................................................... 11

*Williams v. State*, 958 S.W.2d 844, 845 (Tex. App.—Houston [14th Dist.] 1997, pet. ref'd) ...... 23

*Williams v. State*, 958 S.W.2d at 845................................................................................... 24

**Statutes**

Tex. Crim. Proc. Code Ann. art. 37.07 § 3(a) (West)............................................................ 28
Tex. Pen. Code Ann. § 7.02 .................................................................................................. 27
Tex. Pen. Code Ann. §§ 22.02, 1.07(a)(46)........................................................................... 28
Tex. Pen. Code Ann.§§ 22.01;12.21 (West 2017) ................................................................ 27

**Constitutional Provisions**

U.S. Const., amend. XIV, § 1 ............................................................................................... 26

## Statement of the Case

The State charged Appellant with the 2016 aggravated burglary of a Denton County residence. [CR 11; 3 RR 9]. Appellant pled not guilty. [3 RR at 9]. It was his first felony charge. [State's Exhs. 129-30 at CR 169-71][1]. A jury found Appellant guilty on September 27, 2016, and Appellant elected for the trial court to assess punishment. *Id.*; [5 RR at 1]. The trial court assessed Appellant's punishment at 60 years confinement. *Id.* at 8, 101. Appellant then timely perfected this appeal on October 11, 2016. [CR 86]. On October 24, 2016 Appellant also filed a pro se motion for new trial which the trial court denied December 2, 2016. [CR 41, 50; 5 RR 1]. This Court subsequently abated the appeal to allow Appellant to pursue a motion for new trial on punishment disproportionality. [Abatement Order, Jun. 20, 2017]. The trial court denied the motion September 15, 2017. [2 Supp. RR 30-31].

## Statement Regarding Oral Argument

Appellant requests oral argument because the issues raised merit serious consideration and oral argument should significantly aid the Court in making its determination.

---

[1] Subsequent citations to the State's exhibits will be designated "SX" followed by exhibit number and page, if applicable.

**Issues Presented**

**ISSUE 1:** Did the trial court violate Appellant's Eighth Amendment right to be free from cruel and unusual punishment by imposing a sixty year sentence for a first felony offense involving no physical or bodily injury?

**ISSUE 2:** Did the trial court abuse its discretion by focusing on the hotel incident to the exclusion of all other factors in evaluating whether Appellant's sentence was cruel and unusual under the modified *Solem* test adopted by the Texas Court of Criminal Appeals in *State v. Simpson*?

**ISSUE 3:** Did the trial court abuse its discretion by failing to properly apply the modified *Solem* test adopted by the Texas Court of Criminal Appeals in *State v. Simpson*?

**ISSUE 4:** Did the trial court err by failing to properly apply the modified *Solem* test adopted by the Texas Court of Criminal Appeals in *State v. Simpson*?

**ISSUE 5:** Did the trial court violate due process by considering the extraneous offense to assess punishment?

**ISSUE 6:** Did the trial court violate due process by tripling Defendant's sentence because of a single unadjudicated extraneous bad act that alone carried at worst a maximum 1 year sentence?

**Statement of Facts**

On March 17, 2015, Appellant Chase Karrenbrock broke into Jonathan Jackamonis's residence in Roanoke. [3 RR 11-13]. He was 21 years old at the time. [CR 9]. One of Jackamonis's sons boasted on social media about having $60,000 in drug proceeds that belonged to an associate of Karrenbrock's friend. [3 RR 25]. The friend talked Karrenbrock into driving the getaway car while he

broke into the Jackamonis house to reclaim the cash. *Id.* That changed on the way to the house. [3 RR 25-26]. The friend was concerned that Jackamonis might recognize him so Appellant agreed to do the search. [3 RR 26].

Jackamonis, one of his sons, and his young granddaughter were home when Appellant crawled through an open window and brandished a handgun. [3 RR 39-41, 86]. He zip tied the adults' wrists and escorted them upstairs while he searched for the money, leaving the granddaughter downstairs watching television. [5 RR 23, 26]. He was unable to find the money. *Id.* When he left he put the family in the bathroom and asked them to stay there until he was gone. [5 RR 33-34].

Nobody was physically harmed. [3 RR 174-75]. No property was taken. *Id.*

The jury found Karrenbrock guilty of burglary of a habitation with the intent to commit aggravated robbery. [5 RR 101]. Karrenbrock elected to have the trial judge sentence him. [CR 49]. The judge convened a sentencing hearing and some of the jurors stayed to watch. [5 RR 102; 2 RR Supp. 6].

The prosecution called Kevin Krech to testify about an alleged extraneous offense. [5 RR 122]. Krech testified that he and his two brothers were drinking with extended family at a hotel pool. (*See* RR 124-25).[2] Karrenbrock and a friend were playing basketball nearby. *Id.* A fight broke out after Krech's sister-in-law made a racial remark to Karrenbrock's friend (a "black gentleman") and

---

[2] Appellant sustained a black eye and facial lacerations that left scars. [5 RR at 197]. Krech described his brothers' injuries as "a few scrapes and a sore nose." [*Id.* at 138-39].

Karrenbrock confronted Krech and his brothers [5 RR 140-41]. When Karrenbrock approached, one brother struck him in the face knocking him to the ground. *Id.* The other brother then held Karrenbrock on the ground and both continued punching him while Krech fought with Karrenbrock's friend. [5 RR 133].

Karrenbrock testified that he did not strike anyone during the event. [*Id*. at 198]. Nobody controverted this statement.[3]

At the conclusion of argument the trial court assessed Karrenbrock's punishment at 60 years confinement. [5 RR 221]. The court explained "I could have considered 20, 30 years . . ." but for the altercation with the Krech brothers. [5 RR 220].

Karrenbrock perfected this appeal and filed a *pro se* motion for new trial. [CR 99]. This Court abated the appeal to allow his appellate attorneys to assist him in pursuing a new trial on punishment. [Abatement Order, Jun. 20, 2017]. The trial court denied the motion. [3 CR Supp. 4]. At the new trial hearing the trial court again explained that he added 30 – 40 years to Karrenbrock's sentence based on the hotel incident: "I would have considered 20 to 30 years based on the facts that were presented just on guilt/innocence." [2 RR Supp. 29].

---

[3] Appellant sustained a black eye and facial lacerations that left scars. [5 RR at 197]. Krech described his brothers' injuries as "a few scrapes" and a "sore nose." [*Id*. at 138-39]. The record does not indicate that charges were filed. [5 RR 158]. Appellant was never interviewed by police. [5 RR 198]. However the State asked Appellant, "Are you aware that . . . there's actually a warrant for your arrest?" [5 RR 202]. Appellant answered "No, sir, I was not aware."[5 RR 158].

## Summary of the Argument

Chase Karrenbrock was only 21 years old when he committed the offense. He had no prior felonies and no history of violent crime. Nobody was hurt during the offense. No property was taken. It was undisputed that he never threw a punch during the hotel incident. Despite this, the trial judge sentenced Karrenbrock to 60 years confinement in violation of his Eighth Amendment right to be free of cruel and unusual punishment. Karrenbrock's sentence is grossly disproportionate to the offense.

This Court abated Karrenbrock's appeal to allow him to complain that his sentence was disproportionate. Appellant correctly argued that the threshold for his constitutional claim had been met requiring the trial court to consider all of the factors described in the U.S. Supreme Court's opinion in *U.S. v. Solem.* Karrenbrock's attorneys argued that the trial record required a lower sentence and offered evidence that Karrenbrock's sentence was alarmingly higher than the norm for similar crimes in Texas and elsewhere. The trial judge disregarded this evidence and continued to focus primarily on the hotel incident. The court denied Appellant's motion without complying with his duty to weigh the majority of the *Solem* factors. The failure to apply the proper standard constituted an abuse of discretion.

The trial court's emphasis on the hotel incident also violated Karrenbrock's

right to due process of law. While the court had to consider the evidence to determine if Karrenbrock had committed an offense during the hotel incident, he could not consider that evidence in sentencing unless an offense had been proven beyond a reasonable doubt. No rational fact finder could have found that Karrenbrock committed an offense during the incident. Even had he committed an offense, it was at most a class A misdemeanor carrying a maximum sentence of one year. No rational fact finder would have added 30 – 40 years to Karrenbrock's sentence because of it. Because the trial judge did just that, he violated Karrenbrock's right to due process of law.

For those reasons, Appellant's sentence should be reversed, and the case remanded to the trial court for a new trial on sentencing.

## Argument and Authorities

**ISSUE 1 (Restated): Did the trial court violate Appellant's Eighth Amendment right to be free from cruel and unusual punishment by imposing a sixty year sentence for a first felony offense involving no physical or bodily injury?**

## A. Standard of Review

The Texas Court of Criminal Appeals has acknowledged that the Eighth Amendment's prohibition against cruel and unusual punishment requires reversal of sentences that are grossly disproportionate to the offense. *See State v. Simpson*, 488 S.W.3d 318, 323 (Tex. Crim. App. 2016). *See also Adetomiwa v. State,* 421 S.W.3d 922, 928 (Tex. App.—Fort Worth 2014, no pet.); *Lawrence v. State,* 420

S.W.3d 329, 333 (Tex. App.—Fort Worth 2014, pet. ref'd). The Court adopted the test for disproportionality from two United States Supreme Court cases. The first prong of the inquiry relies upon the U.S. Supreme Court's opinion in *Solem v. Helm.* 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983). There the Court adopted a three factor test that requires comparing: (1) the gravity of the offense and the harshness of the penalty; (2) the sentences imposed for similar crimes in the same jurisdiction; and (3) the sentences imposed for similar crimes in other jurisdictions. *Id.* at 292, 103 S.Ct. at 3010.

Justice Kennedy proposed a modified *Solem* test in *Harmelin v. Michigan,* 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991). In a concurring opinion he proposed making the first prong of *Solem* a "gateway" through which a defendant must pass before a court is required to apply the remaining factors. 501 U.S. at 1005, 111 S. Ct. at 2707 (Kennedy, J., concurring). If the threshold inquiry leads to an inference of disproportionality, then the court should apply the remaining factors to determine if the sentence violates the Eighth Amendment. *Id*. Justice Kennedy's "modified *Solem* test" has been uniformly adopted by Texas courts. *See State v. Simpson, ibid.; McGruder v. Puckett,* 954 F.2d 313, 316 (5th Cir.), *cert. denied,* 506 U.S. 849, 113 S.Ct. 146, 121 L.Ed.2d 98 (1992); *Reyes v. State*, No. 08-15-00311-CR, 2017 WL 1164592, at *4 (Tex. App. Mar. 29, 2017 pet. ref'd) (citing several additional court of appeals opinions); *Moore v. State*, 54

S.W.3d 529, 541–42 (Tex. App.—Fort Worth 2001, pet. ref'd).

**B.      The trial court's sentence is grossly disproportionate, meeting the "gateway" inquiry.**

"To determine whether a sentence for a term of years is grossly disproportionate for a particular defendant's crime, a court must judge the severity of the sentence in light of the harm caused or threatened to the victim, the culpability of the offender, and the offender's prior adjudicated and unadjudicated offenses." *State v. Simpson*, 488 S.W.3d 318, 323 (Tex. Crim. App. 2016).[4] The relative gravity comparisons "can be made in light of the harm caused or threatened to the victim or to society, and the culpability of the offender." *Solem v. Helm*, 463 U.S. at 278, 103 S. Ct. at 3003.

**(1)  The gravity of the offense does not justify the sentence.**

In this case, nothing about the offense or the evidence presented during punishment justifies a 60 year sentence. Despite carrying a loaded weapon, the record makes it clear that young Karrenbrock took measures to ensure that nobody was hurt during the burglary. [5 RR 24].[5] He repeatedly assured the victims that

---

[4] This analysis considers the Defendant's own conduct and culpability rather than general consideration of the crime and its range of sentencing. *Enmund v. Florida*, 458 U.S. 782, 798, 102 S. Ct. 3368, 3377, 73 L. Ed. 2d 1140 (1982) (finding the death penalty inappropriate for a conviction of murder in the first degree and robbery because the defendant's own conduct and individual culpability did not warrant the death penalty).

[5] For example, he repeatedly asked Jackamonis if he needed medicine or water and cut the zip ties when Jackamonis and his son complained that they were painful. He also allowed Jackamonis to grab his granddaughter, who was happily running around and playing, so that she could stay with him in the bathroom when Appellant left the house. *See* [5 RR 29-30; 5 RR 32-

he would not hurt them. *Id.* He made sure that the child who was present saw nothing that would frighten or upset her. *Id.* Even before he left the scene he cut the zip ties used to bind Jackamonis. [5 RR 30]. Nobody was hurt and no property was taken. [3 RR 174-75]. These are not actions one would expect from a hardened criminal. In fact, when Jackamonis called 911 immediately after Appellant left the house, he told the 911 operator that Appellant "wasn't here to hurt anybody, he was here to get his money." [3 RR 78; SX 103 3:44-51].

Karrenbrock did not have a history of violence. His only prior offense is a misdemeanor marijuana conviction. He was only 21 years old at the time of the offense.

An appellant's young age must also be considered in evaluating his sentence. *Eddings v. Oklahoma*, 455 U.S. 104, 115, 102 S. Ct. 869, 877, 71 L. Ed. 2d 1 (1982); *Roper v. Simmons*, 543 U.S. 551, 569, 125 S. Ct. 1183, 1195, 161 L. Ed. 2d 1 (2005). Recently the news media has widely reported that until the mid-20s human brains are "wired for risky behavior." *See, e.g.,* CBS News, *Teens' Brains are Wired for Risky Behavior: Study*, March 8, 2017, 2:36 P.M.[6]

---

34; 3 RR 78; SX 103 3:44-51].

[6] Available online at https://www.cbsnews.com/news/teens-brains-are-wired-for-risky-behavior-study/ .

Prominent academic studies have found that until their mid-20s adolescents are prone to risky behavior. This is particularly true of males. One study concluded that

> The adolescent population is highly vulnerable to driving under the influence of alcohol and social maladjustments due to an immature limbic system and prefrontal cortex. Synaptic plasticity and the release of neurotransmitters may also be influenced by environmental neurotoxins and drugs of abuse including cigarettes, caffeine, and alcohol during adolescence. ***Adolescents may become involved with offensive crimes, irresponsible behavior, unprotected sex, juvenile courts, or even prison.*** According to a report by the Centers for Disease Control and Prevention, the major cause of death among the teenage population is due to injury and violence related to sex and substance abuse.

Arain "Maturation of the Human Brain" 9 Neuropsychiatr Dis Treat 449–461 (April 3, 2013)(emphasis added).[7]

While this widely reported information does not excuse Karrenbrock's actions, it does indicate that incarcerating him beyond age 50 is alarmingly harsh. The record as a whole paints a picture of an immature young man who lacked early family support and who engaged in risky behaviors. Although there was evidence that he prepared prior to burglarizing the Jackamonis residence, most of the evidence shows a lack of impulse control.

The sentence was grossly disproportionate to the crime.

**(2) The sentence far exceeds other sentences within this jurisdiction for similar crimes.**

---

[7] Available online at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3621648/

"In the rare case in which this threshold comparison leads to an inference of gross disproportionality, the court should then compare the defendant's sentence with the sentences received by other offenders in the same jurisdiction and with the sentences imposed for the same crime in other jurisdictions." *State v. Simpson*, 488 S.W.3d at 323; *McGruder v. Puckett*, 954 F.2d 313, 316 (5th Cir. 1992); *Solem v. Helm*, 463 U.S. 277, 278, 103 S. Ct. 3001, 3003, 77 L. Ed. 2d 637 (1983).[8]

At the new trial hearing Karrenbrock offered substantial evidence to show that his punishment was significantly greater than other courts imposition for similar crimes. Appellant's Exhibit 9 was a list of opinions from this Court for the identical offense. [3 Supp. RR 9]. Exhibit 9 shows Appellant's sentence far exceeds virtually all sentences in similar situations in cases before this Court. *Id.* [3 RR Supp. 158-70]. The only sentences as high as Appellant's involved serious injuries (stabbings, gunshot wounds, rapes) or a finding that the perpetrator was a prior violent or habitual offender. *Id.* In fact, almost all sentences that exceed ten

---

[8] In contrast to this case where there is no prior felony and no bodily injury, many harsh sentences involve repeat offenders and recidivism statutes *E.g., McGruder v. Puckett*, 954 F.2d 313 (upholding sentence of life without parole where Defendant was a habitual offender with multiple felony convictions for burglary, armed robbery, and prison escape prior to conviction for burglary of an automobile); *Hammer v. State*, 461 S.W.3d at 304 (upholding 15 year sentence for burglary of a habitation after petition to revoke community supervision where four other burglary cases were pending and Defendant had attempted burglary of another home only eight days after being placed on deferred adjudication); *Rummel v. Estelle,* 445 U.S. 263, 100 S. Ct. 1133 , 63 L. Ed. 2d 382 (1980) (upholding a mandatory life sentence under recidivism statute for nonviolent felonies involving small amounts of money where Defendant could be eligible for parole in as soon as twelve years where Defendant had been imprisoned for two prior felonies and convicted of a third under the statute).

years involve some violence. *Id.* A few similar cases resulted in sentences under ten years even when the defendant was violent or had prior felonies. *See, e.g., Henry v. State*, 02-13-00555-CR, 2015 WL 1407888 (Tex. App.—Fort Worth Mar. 26, 2015, no pet.) (5 years for aggravated robbery with a deadly weapon); *Lineberger v. State*, 02-12-00286-CR, 2013 WL 1666864 (Tex. App.—Fort Worth Apr. 18, 2013, pet. ref'd) (8 years, after violating deferred adjudication with four pending cases for burglary of a habitation); *and Taylor v. State*, 02-09-00325-CR, 2010 WL 4880696 (Tex. App.—Fort Worth Nov. 18, 2010, no pet.) (8 years after multiple violations of deferred adjudication for another burglary). When compared to similar sentences in this Court's jurisdiction, Karrenbrock's sentence is seriously disproportionate.

### (3) The sentence far exceeds other sentences in other jurisdictions for similar crimes.

Karrenbrock's sentence is even more disproportionate compared with similar crimes in other jurisdictions. In some circumstances the exact offense committed by Appellant is a federal crime. Federal courts are required to follow uniform sentencing procedures that ensure federal sentences are consistent nationwide. Karrenbrock's sentence is more than ***ten times*** what he would have received under the federal sentencing guidelines for the exact same crime with the exact same criminal history and extraneous offense. [3 RR Supp.152-157] (41-51 month sentence for offense level 22, Criminal History Category I).

The same is true in other state courts. Karrenbrock offered evidence of the average sentences nationwide for violent crimes. *See* [3 Supp. RR Exs. 1-7]. These exhibits showed the vast majority of Texas sentences for aggravated assaults to be under twenty years. [3 RR Supp. 149]. Well over half of convictions for burglary of a habitation are under 10 years. [3 RR Supp. 150]. **More than half of the sentences for *murder* are under 40 years, 20 years less than Appellant's sentence**. [3 RR Supp. 151].

## C.    Appellant's sentence is unconstitutionally disproportionate.

Appellant did not deserve to be treated more harshly than others in his situation. The facts of the offense, his age, and his lack of violent history show his 60 year sentence to be disproportionate. It is significantly higher than all similar cases in this jurisdiction, and many times higher than in other jurisdictions across the country. Because his sentence violates the Eighth Amendment prohibition against cruel and unusual punishment, this Court should reverse and remand for a new sentencing hearing.

> **ISSUE 2 (Restated):  Did the trial court abuse its discretion by focusing on the hotel incident to the exclusion of all other factors in evaluating whether Appellant's sentence was cruel and unusual under the modified *Solem* test adopted by the Texas Court of Criminal Appeals in *State v. Simpson*?**

> **ISSUE 3 (Restated):  Did the trial court abuse its discretion by failing to properly apply the modified *Solem* test adopted by the Texas Court of Criminal Appeals in *State v. Simpson*?**

**ISSUE 4 (Restated): Did the trial court err by failing to properly apply the modified *Solem* test adopted by the Texas Court of Criminal Appeals in *State v. Simpson*?**

The record shows that the trial judge ignored most of the factors required to evaluate whether Karrenbrock's sentence was cruel and unusual. Instead, the trial judge focused almost exclusively on the hotel incident. At least twice the judge admitted that he ***added 30 – 40 years*** to Appellant's sentence, doubling or tripling it based on that fact alone. The trial judge abused his discretion by disregarding most of the evidence necessary to apply the modified *Solem* test. The trial judge also abused his discretion by failing to properly apply the test and by giving undue weight to the hotel incident.

**A. Standard of review.**

A court abuses its discretion when it fails to follow the appropriate analysis and balancing factors. *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990), *on reh'g* (June 19, 1991). The test is whether the court acted without reference to guiding rules and principles. *Id.* It is not enough that the appellate court might disagree with the outcome. *Id.* "[A] trial court judge is given a 'limited right to be wrong'", but only if the result is not reached in an arbitrary or capricious manner. *Id. citing* Rosenberg, *Judicial Discretion,* 38 Ohio Bar 819, 823 (1965). *See also Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003).

**B.** **The trial court abused its discretion by failing to apply the modified *Solem* test.**

At the hearing on his motion for new trial, Karrenbrock argued that his sentence was cruel and unusual in violation of the Eighth Amendment. *See State v. Simpson*, 488 S.W.3d at 323. Case law clearly required the trial judge to apply the modified *Solem* factors to make its determination. *Id*.; *Graham v. Florida*, 560 U.S. 48, 60, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010); *McGruder v. Puckett*, 954 F.2d 313, 316 (5th Cir.1992). The record shows that the trial judge disregarded the vast majority of the factors in making its decision to deny the motion.

Instead of applying the factors, the court opined that "to change the sentence would be dishonest" and "unethical" because the sentence is "wholly on me. It's my responsibility." [2 RR Supp. 28, 30]. He said that the hotel incident showed Appellant's "meanness of spirit and apparent viciousness…. He is who he is. What occurred, occurred." [2 RR Supp. 29-30]. "It's just this is what this case deserves, what he deserves." [2 RR Supp. 31].

There is no indication that he considered any of the other factors. In fact the transcript of the hearing shows that he completely ignored the last two prongs of *Solem*: He admitted as much by acknowledging that Appellant's sentence was the same as another defendant convicted of a "violent rape during a burglary" in his own court the prior week. *Id.* He was also personally aware that a murderer sentenced "down the hall" received a lesser sentence. *Id*. at 30. He did not

consider either sentence relevant, and stated that the "attorneys wisely chose to go with the jury" for sentencing. *Id.*

The record also indicates that the judge ignored the substantial evidence offered by Karrenbrock's attorneys proving that his sentence far exceeded the norm.

The trial judge was required to apply ***all*** of the *Solem* factors. By focusing on the hotel incident to the exclusion of every other prong of *Solem* was error or an abuse of discretion. *See Jackson v. State*, 680 S.W.2d 809, 814 (Tex. Crim. App. 1984).[9]

## C. The trial court abused its discretion by failing to use objective, guiding principles in sentencing.

Since the trial court assessed Karrenbrock's punishment the judge took on the dual role of both gatekeeper and fact finder with respect to the prior bad acts. *See State v. Medrano,* 127 S.W.3d 781, 791 (Tex. Crim. App. 2004). The gatekeeper role required the judge to make the threshold determination of relevance. *Id.* An arrest, indictment, or other charge is not sufficient for an inference of guilt. Tex. Code Crim. Proc. Ann. § 2.01 (West 2017). Having decided to admit the evidence, the fact-finder role then required the judge to determine whether the bad conduct was proved beyond a reasonable doubt. *See*

---

[9] There the court considered a presentencing report to the exclusion of all other evidence. Without articulating the standard, the court simply concluded that the trial court abused its discretion. *See Jackson v. State*, 680 S.W.2d 809, 814 (Tex. Crim. App. 1984).

*Mitchell v. State,* 931 S.W.2d 950, 953 (Tex. Crim. App. 1996); *Ortega v. State,* 126 S.W.3d 618, 622 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd).

"[T]he court may then only consider the extraneous offense in assessing punishment if it finds that the offense was proven beyond a reasonable doubt." *Williams v. State*, 958 S.W.2d 844, 845 (Tex. App.—Houston [14th Dist.] 1997, pet. ref'd). A trial court abuses its discretion when its erroneous decision to consider the extraneous offense is beyond the zone of reasonable disagreement. *Montgomery v. State,* 810 S.W.2d 372, 380 (Tex. Crim. App.1990) (op. on reh'g); *see Green v. State,* 934 S.W.2d 92, 101-02 (Tex. Crim. App.1996), *cert. denied,* 520 U.S. 1200, 117 S.Ct. 1561, 137 L.Ed.2d 707 (1997).

The extraneous offense evidence fell far short of proving an offense beyond a reasonable doubt. [5 RR 133]; n. 3, *supra. See Huizar v. State*, 12 S.W.3d at 482; *Haley,* 173 S.W.3d at 515. In fact, the most objective interpretation of the evidence is that Karrenbrock was the victim rather than the perpetrator of the assault. Krech's sister-in-law provoked the conflict by yelling an inflammatory, racial insult about Karrenbrock's friend because of his choice in music. [5 RR 141-42]. When Karrenbrock approached and confronted Krech's brother, the brother hit Karrenbrock in the face and knocked him to the ground. [5 RR 140, 197-98]. Karrenbrock never threw a punch. [5 RR 133, 142-43, 198][10]. The trial

---

[10] The record is clear that Appellant's friend punched one of the witness's brothers, but the record is not clear on

court would not have been permitted to allow a jury to hear the evidence of this offense. *See Huizar v. State*, 12 S.W.3d at 482. For the same reason, the trial court should not have used it to justify adding 30 or 40 years to Karrenbrock's sentence.

A finding of abuse of discretion requires proof that the court considered the improper evidence in arriving at the sentence. *Harrington v. State*, 2-08-423-CR, 2010 WL 1137046, at \*2 (Tex. App.—Fort Worth Mar. 25, 2010, no pet.); *Williams v. State*, 958 S.W.2d at 845. The record in this case is replete with comments by the trial judge that he doubled or tripled Karrenbrock's sentence based on the extraneous offense. As discussed previously, the trial judge said that he would have sentenced Karrenbrock to 20 to 30 years based on the guilt/innocence portion of the trial. He added the additional 30 to 40 years based almost exclusively on the unadjudicated "bad act." [3 RR Supp. 29].

The trial judge abused its discretion by doubling or tripling Karrenbrock's sentence based on an extraneous bad act that had not been proven beyond a reasonable doubt. *See Williams v. State*, 958 S.W.2d at 845; *Harrington v. State*, 2-08-423-CR, 2010 WL 1137046, at \*2. [5 RR 133; 142-43].

**D. The trial court's abuse of discretion in sentencing was harmful.**

Even a small increase in a sentence is prejudicial. *Lampkin v. State*, 470 S.W.3d 876, 917 (Tex. App.—Texarkana 2015, pet. ref'd). *See Glover v. United*

---

other actions in the incident. No evidence controverted Karrenbrock's testimony that he never struck anybody.

*States,* 531 U.S. 198, 200, 202, 121 S.Ct. 696, 148 L.Ed.2d 604 (2001). "[A]ny amount of actual jail time has Sixth Amendment significance *Glover v. United States*, 531 U.S. at 203, 121 S. Ct. at 700. Prejudice occurs when the facts demonstrate harm beyond mere conjecture or speculation. *Lampkin v. State*, 470 S.W.3d at 918.

In this case, the trial judge twice stated that the extraneous bad act increased Karrenbrock's sentence by a multiple of two or three, adding 30 to 40 years to the punishment. *See id*. [5 RR 220; 3 RR Supp. 29]. The trial court's abuse of discretion constituted harmful error.

> **ISSUE 5 (Restated): Did the trial court violate due process by considering the extraneous offense to assess punishment?**
>
> **ISSUE 6 (Restated): Did the trial court violate due process by tripling Defendant's sentence because of a single unadjudicated extraneous bad act that alone carried at worst a maximum 1 year sentence?**

Because the State failed to prove the hotel incident constituted an extraneous offense beyond a reasonable doubt, the trial court violated Karrenbrock's right to due process of law under the Fifth and Fourteenth Amendments by using the incident to increase Karrenbrock's sentence. Even if the trial court could have considered the hotel incident an offense, it was at most a misdemeanor assault carrying a maximum punishment of a year. The trial court violated Karrenbrock's right to due process by adding 30 to 40 years to the sentence based on the event.

The 14th Amendment proscribes deprivation of liberty without due process of law. U.S. Const., amend. XIV, § 1; *Apprendi v. New Jersey*, 530 U.S. at 476, 120 S. Ct. at 2355. Due process requires that extraneous bad acts be established beyond a reasonable doubt. *Id.* 530 U.S. *at* 483-84; 120 S. Ct. at 2359.

A due process complaint requires the court to review "all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Adames v. State*, 353 S.W.3d 854, 860 (Tex. Crim. App. 2011).

The evidence fails to prove that Karrenbrock committed an offense during the hotel incident. First, there was no evidence showing Karrenbrock committed an assault. Krech, the state's witness to the event, testified that his brother threw the first punch during the incident, then another brother prevented Karrenbrock from getting back up from the floor. [5 RR 133; 142-43]. The brothers then pinned Karrenbrock to the floor and punched him in the head. [5 RR 197]. There was no evidence that Karrenbrock ever threw, much less landed, a blow. [5 RR 133; 142-43].

Krech testified that Karrenbrock's friend punched his brother's nose and that "someone" grabbed his wife. [5 RR 134].[11] Krech testified that he and his brothers

---

[11] All other references to an assault are based on the witness and his family's characterization of the incident to the police, but do not contain facts indicating an assault by Appellant. [5 RR 149, 151, 155].

were injured in the hotel incident, but he did not testify that Karrenbrock inflicted the injuries or even threw a punch. [5 RR 133, 138-39]. Without evidence that Karrenbrock committed an assault that caused bodily harm, Karrenbrock could not be held criminally responsible. *See* Tex. Pen. Code Ann. § 7.02; *Smith v. State*, 61 Tex. Crim. 349, 351, 135 S.W. 152, 153 (1911).

There was evidence that Karrenbrock's friend participated in the fight. Krech testified that while his brothers held Karrenbrock down he fought with Karrenbrock's friend. However Karrenbrock is not responsible for his friend's conduct:

> Under no phase of the law of principals can a party be guilty as a principal from the fact of knowledge on his part that somebody was making an unlawful attack upon a third party. He must do something. He must aid and encourage by words or gestures, or do some act in the way of encouragement of the actual participants in order to make him guilty as a principal. The mere fact that a party may have knowledge of a crime will not make him guilty as a principal.

*Smith v. State*, 61 Tex. Crim. at 351, 135 S.W. at, 153. The trial court violated Karrenbrock's due process rights in considering the hotel incident to increase Karrenbrock's sentence because no rational fact finder could have found Karrenbrock committed an offense beyond a reasonable doubt.

Even if the hotel incident amounted to an offense, it was at best a class "A" misdemeanor carrying a maximum 1 year sentence. Tex. Pen. Code Ann.§§ 22.01;12.21 (West 2017). Krech testified that he fell and injured his shoulder

during the incident and that his brothers had some scratches and a sore nose. No rational fact finder would find these serious bodily injuries constituting felony aggravated assault. *See* Tex. Pen. Code Ann. §§ 22.02, 1.07(a)(46). And no rational fact finder would add 30 – 40 years to a sentence based on an unadjudicated misdemeanor carrying a maximum 1 year punishment.

The trial court's sentence violates due process because the court sentenced Defendant for an unadjudicated bad act that was not proved beyond a reasonable doubt. *Johnson v. State*, 176 S.W.3d at 98. Despite this the court relied on the event to increase Karrenbrock's sentence. [5 RR 220; 3 RR Supp. 29]. *See* 37.07 § 3(a). Even if he could consider the incident, no rational fact finder would have used it to increase the punishment 30 to 40 years.

The trial court violated Karrenbrock's due process rights by tripling Karrenbrock's sentence on the basis of the unproved misdemeanor. *See id.; Apprendi v. New Jersey*, 530 U.S. at 483-84.

## PRAYER

THEREFORE, for the reasons explained above, Appellant requests the Court to reverse Appellant's sentence and remand this case to the trial court for a new sentencing hearing. Appellant also requests general relief.

Respectfully submitted,

/s/ J. Jeffrey Springer
J. Jeffrey Springer

Texas Bar No. 18966750
jeff@springer-lyle.com
Aubry L. Dameron
Texas Bar No. 24093766
aubry@springer-lyle.com
SPRINGER & LYLE, LLP
1807 Westminster
Denton, Texas 76205
Tel:    (940) 387-0404

## CERTIFICATE OF SERVICE

I certify that on December 21, 2017, I caused to be served the foregoing instrument on the following counsel of record via the Court's electronic case filing system pursuant to Tex. R. App. P. 9.5. Upon notification that the electronically filed brief has been accepted as sufficient, a courtesy hard copy of this document will be mailed to the State and a hard copy will be served by first-class United States mail, postage prepaid, to Appellant, Chase Mathew Karrenbrock, SO #180532, Denton County Jail, 127 N Woodrow Ln, Denton, TX 76205.

Matthew C. Wiebe, Esq.
Denton County Criminal District Attorney
1450 E. McKinney, Suite 3100
Denton, TX 76209

/s/ J. Jeffrey Springer
J. Jeffrey Springer

## CERTIFICATE OF COMPLIANCE

In compliance with Tex. R. App. P. 9.4(i), I certify that this document contains 5,612 words. This document was created in Microsoft Word. The body is in conventional 14 point text, and the footnotes are in conventional 12 point text. I have relied on the Microsoft Word software and word-count generated by the software in making this certificate.

/s/ J. Jeffrey Springer
J. Jeffrey Springer